# Wallins Creek Collieries Company v. Elbert Jones and Kentucky Workmen's Compensation Board.

(Decided May 14, 1926.)

## Appeal from Harlan Circuit Court.

1. Master and Servant.—Reviewing court, in absence of fraud, cannot disturb Compensation Board's finding of facts on evidence.
2. Master and Servant—Evidence Held to Sustain Finding of Compensation Board as to Proportion of Disability Due to Tuberculosis and that Due to Injury (Workmen's Compensation Act [Ky. Stats., sections 4880-4987]).—In proceedings under Workmen's Compensation Act by injured employee for an award, evidence held to support finding of Compensation Board as to proportion of disability due to tuberculosis and that due to injury.
3. Master and Servant.—Agreement for compensation between employer and injured employee, which was filed with and approved by Workmen's Compensation Board, had effect of award.
4. Master and Servant—Compensable Period on Reopening Award is Determined by Deducting Time Only During which Compensation was Paid Under Original Award (Workmen's Compensation Act [Ky. Stats., Section 4902]).—On reopening agreed award of compensation under Ky. Stats., section 4902, the compensable period is to be determined by deducting the time during which compensation was paid under original award, but not that intervening before petition to reopen, for which no compensation was paid.
5. Courts.—Every opinion is to be be read, having regard to facts of a case and question actually decided.

SAMPSON & SAMPSON and C. T. DOTSON for appellant.

HALE, LEE & SNYDER for appellees.

OPINION OF THE COURT BY JUDGE GOODPASTER—Affirming.

The appellee Elbert Jones was employed as a laborer in the colliery of appellant, Wallins Creek Collieries Company, in Harlan county, Kentucky. Both had accepted the provisions of the Workmen's Compensation Act.

On the 5th day of July, 1923, appellee was injured by reason of an accident which strained and injured him in the chest, side and back in lifting a car on to the mine track. Appellee insisted that the injury resulted in con-

sumption of the lungs and wholly disabled him; that he is unable and has been unable ever since the receipt of his injury to perform labor. Appellant, on the other hand, insists that the alleged consumption of the lungs was not caused by the injury and in fact has no connection whatever therewith. The compensation board took up and heard the matter and made the following award:

"The proof shows that on the 5th day of July, 1923, Elbert Jones and the Wallins Creek Collieries Company had elected and were operating and working under provisions of the workmen's compensation law of Kentucky; that on the 5th day of July, 1923, Elbert Jones was injured by reason of an accident arising out of and in the course of his employment by the defendant company; that on said day while lifting a heavy car he strained and injured himself in the chest, side and back. Due and proper notice of the accident was given. The record discloses the very significant fact that the plaintiff was a well and able-bodied man before the accident herein, but at the present time is totally disabled. The proof shows that tuberculosis germs are found in Jones' sputum and that rales were discovered in his lungs. Prior to the accident these facts had not shown themselves in any way whatever.

"We conclude that the plaintiff was suffering from a pre-existing disease, to wit: tuberculosis, at the time of his injury and that the accident here complained of lighted up the disease and caused its immediate spread through his lungs and system. The average weekly wage was sufficient to entitle him to the maximum compensation, vigor and power to earn money prior to the injury and his complete breakdown after the accident.

"We conclude that the disease, to wit, tuberculosis, caused 75% of his disability and the accident herein complained of caused 75% (evidently meaning 25%) of plaintiff's total and permanent disability.

"The record shows that the plaintiff's average weekly wage at the time of the accident was sufficient to entitle him to compensation based on the maximum amount.

## AWARD.

"This case coming on to be heard and the Workmen's Compensation Board being sufficiently advised, it is adjudged that plaintiff, Elbert Jones, recover from the defendant, Wallins Creek Collieries Company, compensation for injury received in accident that arose out of and in the course of his employment with the defendant at the rate of $9.00 per week for 75% permanent, partial disability for a period of 335 weeks, with interest at the rate of 6% on all past due payments."

The Wallins Creek Collieries Company appealed from the award of the board to the Harlan circuit court, which the court sustained, and it thereupon objected and excepted to the judgment and prayed an appeal to this court, which was granted.

It will be necessary to examine the evidence to ascertain whether there was substantial and credible evidence to support the board's finding. In the case of Employers' Liability Assurance Corporation v. Gardner, 204 Ky. 217, this court said: "Unless there is an entire absence of substantial and credible evidence to support the board's finding of facts, this court, in the absence of fraud, cannot disturb it."

The appellee Jones testified substantially as follows:

"While lifting a car in appellant's mine I felt like it bursted me. I never paid any attention to it and went to work and I began to weaken down and could not pick up my shovel. It made me weak, couldn't breathe hardly; my back gave way, my chest hurt and about two days later spit up blood. If I get worried or try to do any kind of work I feel fainty, sweat will burst out on me and I get hot in my lungs. I get short of breath. Never had that condition prior to injury; that has developed by reason of the injury; has developed since the injury; I commenced feeling these same feelings and symptoms and conditions immediately after getting hurt there and have grown worse constantly since then. Never had any lung trouble before I was hurt; know of no lung trouble in my family. I am broke down, unable to work. I always thought I was as much man to my size as the ordinary man. I felt pain in lung and

back some four or five minutes after receiving the injury, I guess, and that pain has still kept up since then and has caused the trouble spoken of here and is now the cause of my condition at the present time. The first pain was in my back and lung together. After receiving the injury I rested a while and then went to my boarding house and laid down on the porch and was not able to move myself. Mrs. Sears washed me and helped me in bed. Dr. Jones, the company doctor, examined me and gave me some medicine. I was confined to my bed about six days, then got up and stirred around the house and in about eight days I came to town and took my medicine. They took me to a hospital at Corbin about the last of September. My home was at Rockhold, Whitley county. I stayed at the hospital eight days. Before reciving the injury I was a strong, able-bodied man. Average weight of 155 to 167 pounds. I had no sickness or trouble of any kind before the injury. Since the injury my average weight has been 139 pounds. After leaving the hospital I thought I was able to do some work but it got me back. I tried to turn some ground. At times I feel like I could do a little work but other times I am not able to do anything. At times I get out a little bit of work, I don't know, at other times I can't.''

Mrs. J. H. Sears introduced as a witness by appellees testified substantially as follows:

''Elbert Jones was boarding at my house at the time he was injured. He got hurt in the mines. When I noticed him he was laying out on the porch; came in from work and was on the porch and I put him to bed and called the doctor, Dr. Jones. He was in bed a good while. It was a right smart bit before he could get up and stir around. He stayed at our house I expect about seven weeks after the injury and then went home. I have known him a long time. He was a strong, able-bodied man. I never knew him to be sick. He is my first cousin. I saw him spit up blood after the injury. I have noticed him coughing since his injury. Never heard him cough before the injury.''

P. W. Fuston was introduced as a witness by the appellees and testified substantially as follows:

"I have known Elbert Jones about fifteen years. Worked with him in the mines a considerable lot, a year or two all put together, maybe as much as two years. Before the injury he seemed to be as strong as the average man; gave no symptoms of weak lungs or weak back. I never heard him complain of anything being the matter of him. He went along and worked and I never heard any complaint being made at all. Previous to the injury I never knew of him coughing and spitting any more than any other man that was in good health. Since his injury I have noticed him coughing some. He don't look as well as he did, seems to be reduced in flesh."

Dr. L. S. Siler was introduced as a witness by appellee and testified substantially as follows:

"I have known Elbert Jones eight or ten years. He came here (Corbin) to the hospital October 1, 1923. Stayed here seven days. After he left the hospital I treated him at intervals, probably two months, occasionally, but not very often. He was running a temperature when he came here, suffered pain in left side and also pain in right side of back and lumbar region. The best I remember, temperature 100 in morning and 101 and 102 in the afternoon for the first four or five days and then he became normal; but this condition was considerably improved on leaving hospital. This running temperature was caused, in my judgment, by congested condition of both left lung and muscles in the back; lumbar muscles of right side congested."

He was then asked this question:

"What in your best judgment was the cause of this congested lung?"

Answer: "That would be unreasonable to say. I figured that he had empyemia and so explored the cavity of the lung expecting to find pus but failed to find any pus. I cannot say he had a hemorrhage; he had a spitting of blood; I don't think he had any hemorrhage. If he did I don't have any note of it, not a hemorrhage. The vases were shown me by the nurses at various intervals but it was only mucous

streaked with blood. I didn't see any hemorrhage or any considerable amount of blood. When he left here he was much improved all the way around, normal temperature. When I began treating him the lung seemed to be very near normal; it was clearing up very rapidly. While at the hospital he said he had had a former injury lifting a bank car that was off the track which resulted in the condition which we found in his back. He coughed and spit much while in the hospital. I did not suspect any consumptive symptoms in his lungs. The last time I saw him his back seemed to be practically as well as the other side.''

Dr. W. N. Jones, witness for appellant, testified that he examined the appellee on April 3 (which was about nine months after receipt of the injury) and found that appellee had rales in both lungs and an X-ray picture showed he had fibrous tissues, which he thought were the result of the tubercular condition in his lungs, and had a sputum examination which showed bacilli in his sputum, which of course led him to believe or make the diagnosis of tuberculosis.

He was then asked this question:

"Do you think, doctor, that the condition revealed by your examination in April could be attributed to the injury this fellow received?'' Answer: "I don't know.''

Dr. W. P. Caywood, witness for appellant, was asked this question:

"Did you in connection with Dr. E. M. Howard make an examination of Elbert Jones about April 3, 1924 and if so what was the nature of examination and what did you find?''

Answer: "Well, we made an X-ray of his lungs and made a physical examination and also a sputum examination, and we found that he had rales in his lungs and had fibrous tissues in both lungs, and positive tubercular germs in his sputum.''

Question: "What was your diagnosis of his trouble at that time,''

Answer: "Tuberculosis of the lungs.''

The evidence shows conclusively that appellee before receiving the injury complained of was a strong, able-

bodied man and that he never before had any sickness or
trouble; that his average weight was from 155 to 167
pounds before the injury and that since receiving the in-
jury his average weight has been 139 pounds; that before
the injury he was capable of performing a man's labor
but has never been able to perform any labor of any con-
sequence since; that two days after receiving the injury
he spit blood and while in the hospital at Corbin during
the first seven days in October following the injury he
coughed and spit considerably and his sputum was
streaked with blood; that continuously since the receipt
of the injury he has had pains in his lungs.

Although the appellant introduced some physicians
who testified that in their opinion the consumption of the
lungs was not the result of the injury and had no connec-
tion therewith, still in the light of the evidence as above
set forth, which we have carefully examined, we conclude
it was sufficient to support the finding of the compensa-
tion board.

In the case of South Mountain Coal Company v.
Haddix, 213 Ky. 569, this court had under consideration
an award by the Workmen's Compensation Board in
favor of appellee Haddix in which it said:

"While at work in appellant's mine and follow-
ing a strain from working appellee suffered a hem-
orrhage of the left lung. The question at issue be-
tween the parties was whether the strain or pre-ex-
isting disease was the sole cause or whether both
were contributing causes of the hemorrhage. The
preponderance, if not the whole of the evidence, sup-
ports the latter view, but neither the circuit court
nor this court is permitted to review the evidence
except to determine whether or not the board's find-
ing of fact is supported by some substantial evi-
dence. In this case the board made no finding of
facts as it is required to do by section 50 of the act
(4933 Ky. Statutes). This was due, no doubt, to the
fact that at that time the board was acting upon the
belief that it was immaterial whether or to what ex-
tent pre-existing disease contributed to the injury
if it resulted directly from an accident arising out
of and in the course of the employment. This court,
however, has frequently held that the board must
separate the results of pre-existing disease from
those of accidental injury and apportion the award
of compensation accordingly.'"

In the instant case the board made the apportionment as required by the act.

As above stated, there being substantial evidence to support the board's finding, which was approved by the court below, the judgment appealed from should be and is affirmed.

RESPONSE TO PETITION FOR EXTENSION OF OPINION.

PER CURIAM.

Appellant's petition for an extension of the foregoing opinion presents the question as to the date from which appellee is entitled to draw the compensation awarded him.

As stated, appellee was injured on July 5, 1923. By an agreement entered into between him and the appellant, which agreement was filed with and approved by the Workmen's Compensation Board, and thus had the effect of an award, appellee was paid certain compensation up to August 7th, 1923, on which date a final receipt upon the final receipt form prescribed by the board was executed by appellee. On April 4, 1924, appellee filed his petition to reopen the agreed award and it is this proceeding which is involved in this appeal.

Appellant now insists that the period from July 5th, 1923, to April 4th, 1924, must be deducted from the compensable period and that it can be compelled to pay the rate of compensation awarded appellee herein only for that portion of the compensable period as remains after this deduction. Appellee insists that the only deduction appellant is entitled to is the period from July 5th, 1923, to August 7th, 1923.

To support its position, appellant relies on the case of Rex Coal Co. v. Campbell, 213 Ky. 636, 281 S. W. 1039. That case involved the construction to be placed on section 4902 of the statutes, providing for the reopening of award and under which the awards in the Rex Coal Company case and this case were reopened. The concluding sentence of that section reads:

"Review under this section shall be had upon notice to the parties interested and shall not affect the previous order or award as to any sums already paid thereunder."

Construing this language in the Rex Coal Company case, we said:

> "It is therefore our conclusion, though reluctantly arrived at, that the judgment was in error in this case in giving the increased award a retroactive effect, since it is our opinion that the language of the sentence under consideration forbids it and preserves intact, as to both employer or employee or his dependents, the prior award until application for its review is made, and that any change made in it by the board on that hearing will have only a prospective effect from that time."

Appellant would put on this language of the court the interpretation that when an award is reopened, compensation can only date from this reopening, whether or not compensation had been paid for any part of the period prior to the date of the reopening. Every opinion is to be read having regard to the facts of the case and the question actually decided. The interpretation appellant thus puts on the language of the court is warranted neither by the statute itself nor by the facts of the Rex Coal Company case upon which that opinion of course was based. The statute forbids a retroactive effect to any new award only in so far as it affects any sums *already paid* under a previous award. And that was all that was decided in the Rex Coal Company case. Compensation had been steadily paid in that case from the date of the original award up to the reopening of the case. But a few weeks remained of the compensable period. The Rex Coal Company case only decided that the new award could not affect the old award as to sums already paid thereunder and as compensation under that award had never ceased up to the reopening of the case, the new award could have but a prospective effect.

In this case, though compensation ceased on August 7th, 1923, appellee concedes that appellant is entitled to have deducted from the compensable period the time between July 5th and August 7th, 1923. Appellee is correct in this concession under the Rex Coal Company case, because the new award could not affect the old award as to sums already paid thereunder. But since August 7th, 1923, no sums have been paid under the old award and so the new award with the concession granted by appellee does not affect the old award as to any sums paid there-

under. There is nothing in the statutes forbidding an award on the reopening of a case from having a retroactive effect except in so far as such effect would affect such sums already paid under previous awards, and so appellee is correct in his position that the only deduction from the compensable period appellant is entitled to is that period conceded by appellee. The award in this case, though, does not give appellant the deduction appellee concedes. To this extent, the award and the judgment of the circuit court affirming it are erroneous, but the amount of money to which appellant is thus entitled to a credit is too small to warrant a reversal here. The award and judgment, however, should be modified to the extent of crediting the compensable period here by the period during which compensation was paid under the original award. As so modified, the judgment of the circuit court is affirmed.