## Scott Tobacco Co. v. Cooper et al.

(Decided Dec. 12, 1934.)

(Rehearing Denied May 3, 1935.)

KIRK & WELLS and E. R. GENTRY for appellant.

WILSON & ROBINSON for appellees.

J. B. SNYDER and G. G. RAWLINGS amici curiæ.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellee, William C. Cooper, was a traveling salesman for the appellant, Scott Tobacco Company, his territory for the ensuing week being in and around Paintsville, Ky., while he resided in Ashland, Ky. His custom when canvassing that territory was to leave his home and spend Sunday night in Paintsville so as to be ready to commence his work early the following Monday morning. That course was followed by him on Sunday, January 10, 1932, and while returning from a restaurant in Paintsville on that afternoon where he had obtained a meal, a passing automobile threw a

gravel pebble which struck him in one of his eyes, injuring it so that he finally lost the sight of it. Immediately after its happening he was taken or retired to his hotel and notified his employer. Within a few days thereafter a Mr. Mason, an officer of appellant, visited Cooper in his hotel and informed him that he (Mason) was of the opinion that the accident was compensable under our Compensation Act (Ky. Stats. sec. 4880 et seq.), which had been accepted by both parties, Mason furthermore promised appellee that he (Mason) would confer with the insurance company carrying the risk and see what adjustment, if any, could be made.

On April 1 thereafter, appellee was notified that such a conference had been had and that the insurance company denied liability upon the ground that the accident to him did not arise "out of and in the course of his employment" so as to be compensable under the statute. After that information and after the loss of the sight of the eye, appellee, on March 21, 1933, made application to the Workmen's Compensation Board for an award adjusting his claim. Liability was denied upon two grounds: (1) A plea of limitation based upon the theory that the statute (section 4914 et seq. of the 1930 Edition of Carroll's Kentucky Statutes) as interpreted by some of the later opinions of this court prescribed a limitation of one year from the *time of the accident* to the employee within which he must make application *to the Board* for an adjustment of his claim, and that, since the time when such application was made by appellee was more than a year from the happening of the accident resulting in the loss of his eye, it was too late and should be dismissed; and (2) that the accident to appellee did not "arise out of and in the course of his employment."

At the hearing the board disallowed both of those grounds and rendered an award within the limitations of the statute, which was affirmed by the Johnson circuit court on petition for review filed therein by appellant, and from that judgment it prosecutes this appeal. Before considering the grounds, supra, in the order named, it first becomes necessary to clear up some confusion as well as misinterpretation with reference to ground 1.

Our Compensation Act, which is now embodied in sections 4880 to and including 4987 of the 1930 Edition

of Carroll's Kentucky Statutes, nowhere prescribes a definite period of limitation within which an employee entitled to its benefits may make application to the Compensation Board for an adjusted award. But notwithstanding that fact, we, in the cases of Ashland Iron & Mining Co. v. Fowler, 208 Ky. 422, 271 S. W. 589; J. R. Kirk et al. v. Sullivan, 213 Ky. 154, 280 S. W. 925; Johnson v. J. P. Taylor Co., 211 Ky. 821, 278 S. W. 169; Carnahan Oil & Refining Co. v. Miller, 232 Ky. 78, 22. S. W. (2d) 430; Hill v. Consolidated Coal Co., 232 Ky. 641, 24 S. W. (2d) 261; Lockhart's Guardian v. Bailey Pond Creek Coal Co., 235 Ky. 278, 30 S. W. (2d) 955, and McIntosh v. John P. Gorman Coal Co., 253 Ky. 160, 161, 69 S. W. (2d) 7, construed section 4914, which is a part of our compensation statute, as fixing a limitation of one year from the *happening of the accident* for the filing of a claim before the board by an injured employee, and in which we held that such an application if made after the expiration of that time should be disallowed because filed too late, unless there was some legal excuse for the delay.

Prior to the rendition of any of our cited opinions and in the case of Wilburn v. Automobile Exchange Co., 198 Ky. 29, 247 S. W. 1109, we construed the language in section 4914, saying, "Unless a claim for compensation with respect to such injury shall have been made within one year after the date of the accident," etc., as applying to the time within which an employee might demand compensation *from his employer,* but we did not in that (Wilburn) opinion attempt to determine what period of limitation, if any, would apply to a proceeding *before the board* to obtain adjustment of the claim. The later cases which we have listed, supra, in some way interpreted the Wilburn opinion as applying to the period of time within which an application *to the board* for an award should be made. Hence, those opinions, after so erroneously interpreting the Wilburn one, designated one year from the time of the *happening of the accident* as the correct limitations period within which a claim for compensation might be made *to the board* by the injured employee. The language of our Compensation Act compels us to acknowledge that error in the later-cited cases. However, it does not necessarily follow that the time within which an application for an award may be made *to the board*

is without limitation. To so construe the statute in the light of its purpose would do violence to the intention and purpose of the Legislature in enacting it.

Many are the opinions of this and other courts, where such statutes exist, in which it was declared, in substance, that the intention of their enactment was primarily to afford an injured employee a *speedy* remedy whereby he might be compensated for an injury accidently sustained by him during the course of his employment, and in which all injuries were embraced regardless of whether they were caused by the negligence of the employer or not. At the same time, so the cases hold, it was conceived by the Legislature that in a considerable percentage of accidents the full consequence and result therefrom would not immediately be developed, and, therefore, latitudinous language was employed with reference to the taking of many steps provided by the act; as for instance in section 4914, supra, in prescribing the time within which notice of the accident shall be given to the employer, it is said, "as soon as practicable after the happening thereof," and which expression is encountered throughout the statute and particularly so in section 4932, which is the only one in the entire act making any reference to the time within which an application to the board for an award may be made by the injured employee.

Intervening sections between 4914 and 4932 prescribe for an agreement between the employer and injured employee after the former has received notice of the intention to make a claim, given to him within one year, as is prescribed by section 4914. The latter section (4932) prescribes: "If the parties fail to reach an agreement in regard to compensation under this act, or if they have previously filed such an agreement with the board and compensation has been paid or is due in accordance therewith and the parties thereafter disagree, either party may make written application to the board for a hearing in regard to the matter at issue and for a ruling thereon. Such application for a hearing must be filed *as soon as is practicable* after disagreement or after the cessation of voluntary payments, if any have been made." (Our italics.) It will thus be seen that the entire Compensation Act contemplates that the employer and employee shall first have an opportunity to agree upon the amount of the latter's

compensation and the period through which it should extend, and it is provided that if such an agreement is reached it shall be filed with the board, and with its approval it becomes an award. But the excerpt from section 4932, supra, makes provision for the obtention of compensation through an award by the board when "the parties fail to reach an agreement," etc.

Later on, as will be seen from the excerpt, it is prescribed that "such application for a hearing [for an award when the parties can not agree upon one] must be filed *as soon as is practicable* after disagreement." (Our italics.) It will be seen that the only limitation upon the filing of the application before the board therein referred to is one to be measured by the phrase "as soon as is practicable," and which, to our minds, clearly indicates that the Legislature did not intend that such an application might be made at *any* remote future time after disagreement and/or whenever the claimant saw proper to make it within an unlimited and distantly remote period. That expression was evidently in furtherance of the purpose of the Legislature hereinbefore referred to, i. e., that all procedural steps to obtain the benefits conferred by the statute should be taken as soon as possible so as to meet the necessities created by the disablement or the death of the unfortunate employee.

It, therefore, devolves upon us in disposing of this ground to determine whether or not the time within which the application to the board made by appellee herein was within the phrase "as soon as is practicable" as employed in the statute. The compensation statutes of many of the states, including ours, are without specific limitation provisions within which applications for awards may be made to the board after the right to make them accrues, and a majority of the courts of those states in an endeavor to carry out the public policy behind the enactment of the statute, after calling attention to the clear purpose of speedy application, by analogy, apply the local limitation statute with reference to court actions for the recovery of negligently inflicted injuries that existed within the jurisdiction prior to the enactment of the local compensation statute. An illustrative one is Federal Rubber Co. v. Industrial Commission of Wisconsin, 185

Wis. 299, 201 N. W. 261, 40 A. L. R. 491. Others are cited in the annotation on page 495 of the last publication.

That limitation with us, as is prescribed by section 2516 of our Statutes, is one year "next after the cause of action accrued." The time when an application may be made to the board for an award, as we have seen, is, under the provisions of section 4932, after the parties fail to agree, and which is the time, as we conclude, when the right to apply to the board for such an award first accrues. Applying by analogy the one-year statute of limitation prescribed by section 2516, supra, of our Statutes, such an application to the board should be made within twelve months after the parties fail to agree or after they disagree and which we conclude is as liberal an interpretation of the phrase "as soon as is practicable" as could reasonably be required. It avoids the possibility of the loss of evidence for either party, and it also has some relationship to the purpose of speed evidently contemplated by the Legislature, and at the same time it cannot be considered as unduly confining the limits of practicability as contemplated by the statute.

The adoption of such period (one year) within which application may be made *to the board* for an award after the parties disagree can work no injustice to any one. The statute by express terms in section 4914, as we have seen, requires an application (which section 4915 requires to be in writing) for compensation to be made to the employer within one year after the accident, or death thereby produced, and we have held in a number of cases that it is mandatory; subject, however, to the doctrine of waiver, estoppel, and possibly other allowable avoidances. The Legislature, therefore, contemplated that the injured employee could and would within that time ascertain whether or not he had received a compensable injury, although it must have known that changed conditions might develop as a result of the accident beyond that period of time. It was, therefore, provided in other sections of the statute for a reapplication to the board in such circumstances for an increased award, or to the employer for a decrease of the compensation, and which relief may be had under the same sections of the statute under the interpretation that we have herein made.

But, amici curiæ, and other counsel briefing the case for appellee, argue that the five-year statute of limitations prescribed in section 2515 of our Statutes for the bringing of "an action upon a liability created by statute," or the limitation of ten years provided by section 2522 for the bringing of "an action for relief not provided for in this or some other chapter," should apply in this case, and the opinions of some jurisdictions are cited upholding that contention, but which rule is not universally applied by the courts, even though their statutes are similar to ours above referred to. In such latter jurisdictions the limitation of one year hereinbefore discussed and approved for the bringing of actions to recover for personal injuries is applied by analogy, as we have hereinbefore pointed out. However, the courts that have followed the rule contended for by counsel were dealing with compensation statutes that contained nothing indicating any purpose or intention of the Legislature to limit the time within which applications might be made to the administering board for adjustment. Such provisions as are contained in the two sections of our statutes supra (2515 and 2522) apply when there is *no intimation* of any limitation contained in the statute giving the particular remedy, and which, as applied to cases like this, is the local compensation statute. Ours, as we have seen, expresses an intention and purpose for some limitation on the right referred to when it employs the phrase "as soon as practicable," and which, though indefinite as a measurement of time, is still consistent with the permeating idea of speed in the administration of the law, and for which reason no violence will be done to the intention of our Legislature, when it enacted our statute, to apply the limitation period which we have adopted for the bringing of law actions to recover for the same character of injuries.

Both the board and the Johnson circuit court in its review of the board's award concluded that the prescribed requisites in section 4914, supra, were substantially complied with, and there is no serious contention made to the contrary in brief for appellant. Both tribunals also found, and it was supported by the testimony, that the parties failed to agree on or very close to April 1, 1932. The application of appellee to the board for an adjustment of his claim was filed

on March 23, 1933, which was within less than one year from the time of disagreement, and was therefore within time under our interpretation herein reached. It, therefore, follows that neither the board nor the circuit court erred in denying this ground, and which brings us to a consideration of ground 2, supra, embodying the only interposed defense to the merits of the case.

The remedies created and the relief sought to be given by compensation statutes are of comparatively recent origin, ours having been enacted in 1916, though some states may have adopted them as long as thirty years ago. It never was the purpose of those who originated them, or of any Legislature that enacted them, to provide for compensation to employees for every accident that might happen to them at any time or place throughout their period of employment, and which is evidenced by the fact that all of the statutes confine their application to injured employees when their injuries are sustained by an accident "arising out of and in the course of his employment." If it had been the intention and purpose to embrace all accidental injuries, howsoever and whensoever sustained by the employee as long as he remained such, the language would no doubt have been, in substance, this: "All personal injuries sustained by the employee while he occupies that relation to his employer." But, as we have seen, the statutes made no such sweeping provision, and all of them contain limiting language, in substance, the same as the excerpt, supra, from section 4880 of our present Statutes, which is section 1 of our Workmen's Compensation Act.

Courts have experienced considerable difficulty in determining when an accident to an employee arose "out of and in the course of his employment," and it would be a task far beyond the requirements of this opinion to undertake to catalogue the cases and to point out the questions involved in their particular facts, and the ruling of the courts on those questions. Suffice it to say that all of the courts hold that no universally applicable rule for the interpretation of the language of the excerpt is possible, and that each case must be determined on its own facts as to whether the involved accident is or not one within the purview of the language "arising out of and in the course of his

employment.'' The cases cited below, and many others that are not cited herein, are unanimous to the effect that ordinarily, and as a general rule, an accident sustained by an employee while going to or from the place of his master's work before his day's task begins is not one embraced within the language. Thus the Supreme Court of Iowa in the case of Kyle v. Greene High School, 208 Iowa, 1037, 226 N. W. 71, 72, said: ''It is a well-settled general rule that an injury suffered by an employee in going to or returning from the employer's premises, where the work of his employment is carried on, except in special instances, does not arise out of his employment as to entitle him to compensation.'' That statement was referred to with approval in the later case from the same court of Marley v. Orval P. Johnson & Co., 215 Iowa, 151, 244 N. W. 833, 837, 85 A. L. R. 969, and in the Marley opinion the ''special instances'' forming an exception to that general rule, is thus stated: ''Where it is shown that the employee, although not at his regular place of employment, even before or after customary working hours, is doing * * * some duty incidental to the nature of his employment in the interest of, or under direction of, his employer.'' The same general rule qualified by the same character of exception was approved and applied by the Supreme Court of the United States in the case of Voehl v. Indemnity Insurance Co. of North America, 288 U. S. 162, 53 S. Ct. 380, 382, 77 L. Ed. 676, 87 A. L. R. 245.

The facts of that case were: That the servant was injured on Sunday while on his way to the warehouse of his employer for the purpose of clearing it of debris, which it was his duty to do. He was a trusted employee, and subject to call by his employer at any time during the 24 hours; that under the terms of his employment his time ran from the time he left his home until his return thereto, including Sunday, if he performed any part of his services on that day, and his employer ''relied upon him to attend to whatever was necessary in the line of his work without specific or detailed instruction.'' The manager of the employer, who was superior to the injured servant in that case, testified that Voehl was ''on duty all of the time, on our call * * * and we kept him purposely for taking care of emergencies and seeing that all details were cleaned up properly.'' The employee was paid mileage for the

use of his automobile while going to and from the place of his work, and likewise paid 75 cents per hour while doing so. He testified that in obedience to his general authority he, in making the trip during which he sustained his accident, purposed to clean up and remove "an unusual accumulation of trash" from his employer's warehouse, "and that under his orders it was necessary for him to do this on Sunday in order that the building might be in proper condition on the following morning," so that it would be ready for the inspection of the manager which the latter made every Monday morning.

In holding that such facts (together with others appearing in the opinion) brought the case within the exception to the general rule, supra, the Supreme Court, through Chief Justice Hughes, said: "Service in extra hours or on special errands has an element of distinction which the employer may recognize by agreeing that such service shall commence when the employee leaves his home on the duty assigned to him and shall continue until his return. And agreement to that effect may be either express or be shown by the course of business. In such case the hazards of the journey may properly be regarded as hazards of the service, and hence within the purview of the Compensation Act." Many cases from divers jurisdictions are cited in note 2 to that excerpt in the A. L. R. report.

The same principle, both as to the general rule and the exception, was recognized by us in the case of Turner Day & Woolworth Handle Co. v. Pennington, 250 Ky. 433, 63 S. W. (2d) 490. Other domestic cases applying the same general rule, and incidentally recognizing and dealing with a justifiable qualification thereof, are January-Wood Co. v. Schumacher, 231 Ky. 705, 22 S. W. (2d) 117; Porter v. Stoll Oil Refining Co., 242 Ky. 392, 46 S. W. (2d) 510; Meem-Haskins Coal Corporation v. Watts, 242 Ky. 643, 47 S. W. (2d) 82; Warfield Natural Gas Co. v. Muncy, 244 Ky. 213, 50 S. W. (2d) 543; Inland Gas Corporation v. Frazier, 246 Ky. 432, 55 S. W. (2d) 26; Billiter, Miller & McClure v. Hickman, 247 Ky. 211, 56 S. W. (2d) 1003, and others cited in those opinions. None of them (nor any text or foreign case) departs from the general rule, supra, except and unless the facts are such as to create the stated qualifying exception; which, after all, is not an

actual but only an apparent one, since in all of the cases wherein it was applied it was found by the commission who administered the particular Compensation Act, as well as by the court later applied to, that the employee while going to and returning from the place of his work was performing a duty to the master which was embraced by his contract of employment, and for which the master contributed by making compensation for the transportation, and in many, if not all, instances, paid the employee for the time he was so engaged. In such instances the "going to and returning from" the place of work embraced the time covered by the employment.

Applying such interpretation to the facts of this case, we are wholly unable to arrive at but one conclusion, which is, that appellee's unfortunate and lamentable injury did not arise "out of and in the course of his employment." As we have seen, his compensation was not measured by the time devoted to the service of his employer, since his remuneration was a commission on the amount he sold, and which sales his employer accepted. His time was his own, with the liberty and the right to put in as much of it in his efforts to make sales as he saw proper and in the manner he saw proper. There was and is no intimation that he was required to perform any service for his employer on Sunday, nor did his work require any of his labor on that day. He chose to divide his territory into districts, each of which he would canvass, covering a particular period of time, and within which he would select his temporary abode from which he would radiate each day until that territory was covered, one of which was around Paintsville, in which city he received his accident under the circumstances hereinbefore indicated. We can detect no logical distinction between the circumstances under which he was injured in Paintsville from an injury that he might have received in Ashland, where he resided if it had occurred therein under the same circumstances. Certainly it could not be contended that if he had contemplated canvassing the territory around Ashland during the ensuing week (where his actual home would have been his headquarters) and had been injured under the same circumstances it would have been compensable under the statute because it arose "out of and in the course of his employment."

The case of Johnson v. Smith, 263 N. Y. 10, 188 N. E. 140, is an opinion by the New York Court of Appeals. Johnson was employed by Smith, who operated a business at Watkins Glen in that state. A part of it was the handling of agricultural implements, coal, farm produce, and fertilizer. Johnson's duties, as he testified, consisted of "anything from clerical work down to a coal heaver." He received $25 per week and a commission on all coal that he sold. He was allowed one hour off for lunch while working for his employer, and while at Montour Falls canvassing for his employer he became inoculated with typhoid fever germs, which he contended (and which the court accepted as proven) were obtained from the cook at a restaurant where he took lunch. He later developed a case of typhoid fever for which he sought compensation. The court in its opinion said: "The question whether an accidental injury occurred is not argued by appellant [employer], and accordingly we do not volunteer an answer. The sole issue presented is whether claimant's disability arose out of and in the course of his employment." It then answered the question in the negative, but added that: "The rule may be different in cases where the employee is always on duty and subject to call [citing cases] or in instances where the employer requests or customarily permits him to eat upon the premises or in a place provided for him." (Citing cases). Later in the opinion it was said: "For the time being he was resolved into an individual exempt from duties as an employee. He was a free man, and could eat when and where he chose. During the time that he selected, his employer exerted no authority over him and derived no benefit from his acts."

A contrary interpretation under the facts of this case would make the employer (appellant) to all intents and purposes an insurer of his or its employee as long as the relationship existed, even against accidents sustained on the Sabbath day during which there existed no contract for services. It will be noted that appellee's case is even different from those wherein the employee was injured en route while going to or from his place of work. His trip to his place of work, which was to begin the next morning, was completed with safety, and he had come to a state of rest until the beginning of the performance of duties for his master the

next day, during which time, in the language of the New York Court of Appeals, "he was a free man, and could eat when and where he chose."

We, therefore, conclude that the Compensation Board, as well as the court below in approving its award, erred in holding that appellee's injuries were compensable under our statute, and for which reason the judgment is reversed, with directions to set it aside and for proceedings consistent with this opinion.

The whole court sitting.