## Starks Realty Co. v. French et al.

(Decided Feb. 12, 1937.)

TRABUE, DOOLAN, HELM & HELM for appellant.

HORACE B. ROTH and ALPHA HUBBARD for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming in part and reversing in part.

For about two years prior to March 10, 1932, the appellee, Mrs. Hallie French, was a janitress for the appellant, Starks Realty Company, and was on the date mentioned working at night; her shift ending at midnight. A short while before her duties terminated for that night, she undertook, with the use of a pole, to raise the top sash of a window in one of the rooms of the building in which she worked. While pushing upon it, the pole slipped and caused her to fall against either a radiator or some furniture in the room, whereby she sustained a considerable injury to her left side. She worked the next day, but was compelled to cease thereafter, and pleurisy soon developed in that side. The bruise to her left lung produced a sack of fluid upon or in it, and the medical staff at Waverly Hills Sanitarium, to which she was carried, was compelled to and did tap it for the purpose of draining away the accumulated fluid. After leaving the sanitarium, she remained in bed the greater part of the following four months. Her affliction after the accident was diagnosed by her physicians as incipient tuberculosis, which they stated could have been and no doubt was superinduced by the bruise sustained to her left lung. They also said that the certain indications were that she was inoculated with the seeds of tuberculosis prior to the happening of the accident, but that the latter precipitated its development.

Appellee and her employer had accepted the provisions of our Workmen's Compensation Statute (Ky. Stats. sec. 4880 et seq.), and after she was injured proper notice thereof was given, following which she got in communication with the agent of the Traveler's Insurance Company, the carrier of the risk for the employer, and appellant, Starks Realty Company. Divers conversations with the agent, both face to face and over

the telephone, plus some written communications, extending over a long period followed the notification, but according to proof furnished by Mrs. French, no definite conclusion or agreement was ever reached. On the contrary, she proved that the agent would always make evasive answers and responses to her urgent requests for a settlement of her claim, which we conclude, under the proof, was a meritorious one to the extent of her allowable injuries under the statute; they being sustained by her "in the course of her employment" and arose out of it. Finally, after despairing of reaching a settlement by agreement, she made due application to the Compensation Board on February 7, 1935, for an award. The employer resisted it, and upon a hearing before a compensation referee the claim was disallowed. An appeal was made to the board, and it reversed the opinion of the referee and allowed the applicant compensation at $1.71 per week from and after March 17, 1932, with interest on deferred payments, for a period of 416 weeks, or 8 years, not exceeding the sum total of $6,000, but which might be increased to $3 per week with a corresponding reduction of time. From that order the employer sought a review in the Jefferson circuit court, pursuant to the provisions of the Compensation Act, and at the trial thereof the award of the board was affirmed. To reverse that judgment the employer prosecutes this appeal.

Three grounds are argued by the employer's counsel for a reversal of the judgment, and which are: (1) That the application to the board for the award was barred by limitations before it was filed. (2) That there was no finding of fact by the board (a) on the issue of limitations, or (b) on the issue as to the percentage of disability resulting to appellee from the effects of her injuries as compared with her prior diseased condition before receiving it. In other words, it was and is contended that the total disability condition of applicant following her injury was not, according to the proof attributable to it alone, but also to her prior physical condition to which the injury contributed so as to bring about her present total disability. And (3) that the board and the Jefferson circuit court erred in allowing compensation for a period of 416 weeks, as is prescribed by section 4897 of our present Statutes for *total* permanent disability, entirely produced by the injury, in-

stead of for the period of 335 weeks as prescribed in section 4899 of the same Statute for *partial* permanent disability. Each of the grounds will be briefly considered and determined in the order named.

■ In support of ground (1) the case of Scott Tobacco Co. v. Cooper, 258 Ky. 795, 81 S. W. (2d) 588, is cited and relied on. That case considered some prior opinions by this court with reference to the limitation period within which applications for compensation to the board should be made and overruled a number of them in which it was held that the application should be made within twelve months from the *date of the injury*. After thorough consideration of the statute, it was concluded that section 4914 did not prescribe a limitation period within which application for an award might be made *to the board*, but that such provision *was* made in section 4932 of the same statute, and that by its terms the application should be made ''as soon as is practicable after disagreement'' between the parties upon amicable adjustment, or after ''cessation of voluntary payments, if any have been made.'' · It was recoginzed in that opinion that the phrase ''as soon as is practicable'' was indefinite, but by analogy a period of one year (which is the one within which a common-law action must be brought in this jurisdiction for the recovery of negligently inflicted injuries of the same character) was approved as limiting the time embraced by that phrase. The essence, therefore, of the Cooper opinion is that the injured servant should first demand compensation of his , employer and reasonable time should be extended for reaching an amicable adjustment, but if liability is denied, or unreasonable procrastination of a determination with reference thereto is indulged in by the employer, then an application may be made to the board within one year from and after such time or times. In administering such interpretation it surely cannot be successfully contended by the employer that such undue procrastination to agree on his part, howsoever long it might continue, should have the effect of postponing the servant's right to make application to the board for the proper award to which he is entitled. Such, however, is the exact situation here; but we have no hesitancy in determining that appellant, the employer in this case, and its company carrying the risk, through the adjuster having charge of the claim,

estopped both of them from taking advantage of the procrastination by insisting upon the running of the limitation against such right during the period so consumed—throughout which, according to applicant's proof, she was constantly lulled into the belief that her claim was being considered and would be eventually adjusted. We, therefore, conclude that there was ample testimony before the board sustaining its conclusions to that effect, and that it was warranted in doing so. It results, therefore, that ground 1 is without merit.

■ Learned counsel for appellant is also in error, as we conclude, as to both subdivisions (a) and (b) supra of ground 2. We have already disposed of subdivision (a) in our determination of ground 1, supra, wherein we concluded that there was testimony sustaining the conclusion of the board with reference to the issue of limitations. Testimony upon the percentage of disability produced by and attributable to the injury sustained by appellee is also found in the record, as made before the board, and which destroys all support for the contention made in subdivision (b) of this ground. It therefore follows that all of ground 2 should be and it is disallowed. But if it were otherwise as to contention (b) and if there were no testimony in the record authorizing an apportionment between the causes of appellee's present *total* disability, then it would have been the duty of the board to have awarded her for total permanent disability resulting from the injuries she sustained. That conclusion is based upon the testimony that applicant was not suffering with tuberculosis or any other lung trouble prior to the time she received her injuries. Since then she has been totally disabled, and if error was committed at all in the board's finding upon the proper apportionment, it was against the injured servant and not against her employer. She prosecuted no cross-appeal, however, and we are without authority to correct any such error if the record authorized it—but which question we do not now determine, since it is not presented to us. However, the physician witnesses, or at least some of them, testified that appellee's present condition could not be attributable alone to the injury she received, and that the present results were due largely to her prior physical condition, her injury "lighting up" that condition which produced her present total disability; hence the

board's apportionment, and which the judgment appealed from confirmed, as is authorized by our opinion in the case of Robinson-Pettet Co. v. Workmen's Compensation Board, 201 Ky. 719, 258 S. W. 318. In the circumstances it could scarcely be insisted that the employer was prejudiced thereby in any particular.

■ However, we find ourselves unable to concur with the board, or with the court rendering the judgment appealed from, with reference to the period for which compensation should be allowed. In the cited Robinson-Pettet Case a claim for a partial permanent disability was allowed by the board, and approved by all of the courts through which it passed (including this one) for the period of 8 years, or 416 weeks; but the question as to whether or not there was a distinction between the period of compensation for *total* permanent disability resulting from the injury, and for only *partial* permanent disability resulting therefrom, was not raised or insisted on in that case. Section 4897, supra, of our Statutes deals with compensation for total permanent disability and fixed the period thereof at eight years; while section 4899 deals with compensation for partial permanent disability and fixes the compensation period therefor at 335 weeks. Hence, in the latter case of Wallins Creek Collieries Co. v. Jones, 214 Ky. 775, 283 S. W. 1067—involving facts very analogous to those contained in this record—the period for weekly payments due for partial permanent disability was limited by the board to 335 weeks, as is provided in section 4899, supra, of our present Statutes, and which we approved in the Jones opinion, although it was contrary to the holding in the prior Robinson-Pettet Case, supra. The question was again before the court in the comparatively recent case of United States Coal & Coke Co. v. Jones, 261 Ky. 235, 87 S. W. (2d) 366, in which we pointed out the discrepancy between the two prior cases of Robinson-Pettet Co. and Wallins Creek Collieries Co. Cases, and adopted the view that in case of *partial* permanent disability the compensation period should be 335 weeks. It follows, therefore, that the court erred in fixing the period at 416 weeks. It should have been for only 335 weeks, and to that extent only is the judgment erroneous.

Wherefore, it is affirmed as to all of the questions

involved, except the period for which compensation should be allowed, and as to the total maximum amount in any event that should be paid. With respect to the compensable period fixed by the judgment, it is reversed, with directions to modify it so as to conform to the provisions of section 4899, relating to permanent partial disability. The cost of this appeal will be equally divided between the parties.