### Russo et al. v. Leckie Collieries Co. et al.

(Decided June 8, 1937.)

642

FRANCIS M. BURKE, J. ERWIN SANDERS and LAWRENCE S. LEOPOLD for appellants. .

HARMAN, FRANCIS & HOBSON for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Mario Russo, an employee of the Leckie Collieries Company, was killed in its mine on February 9, 1932. He was survived by his widow, Rosa M. Russo, and three children, Placiolo, Frank, and Helen, all of whom live at Gosenzo, Italy. Acting on their behalf, Dr. Alfonso Guiglia, Royal Italian Consul at Louisville, filed their application for adjustment of compensation with the Workmen's Compensation Board on October 3, 1933. In their application they alleged that William Currie, superintendent of the Leckie Collieries Company, agreed to attend to the various matters affecting the estate of the deceased Mario, including the settlement of the compensation due the decedent's dependents, but failed to take the necessary steps, which was a fraud on their rights. The Leckie Collieries Company filed an answer and special plea denying that the failure to file the application for adjustment of compensation was due to any fault or fraud on the part of the defendant or its superintendent, and pleading in substance that the applicants' right and cause of action to file the application for adjustment of claim did not accrue to them at any time within one year next before the filing of the application, and that their right to compensation had been barred and tolled by the one year statute of limitation. When the case was called for hearing, the parties made the following stipulation:

> "It is stipulated that both parties had accepted the provisions of the Workmen's Compensation Act of Kentucky [Ky. Stats. sec. 4880 et seq.] and that deceased employee lost his life by reason of an ac-

cident arising out of and in the course of his employment. It is stipulated further that decedent's wages were $20.00 per week, and that the defendant had due notice of said accident. The only questions to be determined being those of limitation and extent of dependency."

Evidence was then heard which disclosed the following situation: On November 18, 1932, Dr. Guiglia appointed William Currie, superintendent of the Leckie-Collieries, administrator of the decedent's estate, and wrote Mr. Currie a letter stating that he was making the appointment because Mr. Currie had satisfactorily settled the estate of another Italian workman. On November 26, 1932, Mr. Currie replied that he would be glad to accept the settlement of the estate, and had already taken steps toward that end. He added that he had been advised by his attorneys that it was not necessary to be appointed and give bond as administrator, but that he should have a power of attorney, and wanted to know if the authority should come from the consul at Cleveland or from the deceased's wife and beneficiary. He also referred to the fact that a number of debts had been presented to him for payment by John Russo, the brother of the decedent, and wanted to know whether or not these should be paid. On January 20, 1933, Dr. Guiglia replied that the beneficiary, there seeming to be a wife, was the one to give the power of attorney, if she had not been estranged. He also stated that in such a case it was up to the wife and beneficiary to complete the settlement of the estate as the Italian consular agent acted only as an adviser. As such, however, he advised her to give Mr. Currie the power of attorney. As to whether the deceased had other dependents, such as children or parents, that was up to him to find out. He suggested that the claims against the estate be investigated, and asked for further developments. On January 25, 1933, Mr. Currie wrote Dr. Guiglia thanking him for his letter, and stating that he was taking his advice and writing the widow today, and inclosing a copy of the letter. He added, "If you think this should be supplemented with a letter from you, please write her also." He also added he did not want him to think that he was striving for the job as it entailed much more of his time and expense than he could possibly be reimbursed for; but that he would like to see the case settled and done for, and that was the reason alone he was in-

terested in it. Mr. Currie and W. S. Leckie, president of the Leckie Collieries Company, testified that in looking after estates Mr. Currie acted solely on his own behalf, and not as the representative of the company. According to John Russo, the decedent's brother, the decedent had a wife and three children living in Italy, and the decedent had been sending them money for the last two years. About two months after his brother's death, he talked to Mr. Currie about the matter. Mr. Currie was willing to pay, but wanted to know who was going to get the money. After that he talked to him all along about it. Mr. Currie said that there would have to be an administrator appointed. He then got the address of his sister-in-law so Mr. Currie could write to the old country. After that they never answered him any more. He wrote to the Consul at Louisville seven or eight months after his brother's death. The consul wrote him a letter stating that he had a letter from his sister-in-law in the old country, and wanting to know who was going to get the compensation. The board rejected the theory of fraud, sustained the plea of limitation, and dismissed the claim for application. On petition for review the circuit court affirmed the action of the board. The applicants have appealed.

It now is the settled rule in this state that the words in section 4914, Kentucky Statutes, "unless a claim for compensation with respect to such injury shall have been made within one year after the date of the accident, or, in case of death, within one year after such death," refer to the making or filing of the claim with the employer, and not to the filing of the application for adjustment of compensation with the Workmen's Compensation Board. On the contrary, the filing of the application with the board is in time if it be filed within twelve months after the parties disagree or fail to agree. Scott Tobacco Company v. Cooper, 258 Ky. 795, 81 S. W. (2d) 588; Great Atlantic & Pacific Tea Company v. Scanlon, 266 Ky. 785, 100 S. W. (2d) 223; Starks Realty Co. v. French, 267 Ky. 255, 101 S. W. (2d) 946. There being no showing whatever that the application was not filed with the board within the prescribed time, it necessarily follows that the action of the board in dismissing the application on the ground that it was barred by limitation was erroneous.

But it is suggested that the board might with perfect propriety have denied the application on the ground

that no claim had been made of the employer within one year of the death of the decedent. Taking up that phase of the case, we have the following situation: The applicants are non-residents, and some of them infants. The company knew of the death of the decedent and of the fact that he died as the result of an accident growing out of and in the course of his employment. The decedent's brother talked to the superintendent in regard to the case and was informed that the compensation would be paid when they found out to whom it was payable. On being informed of the death of the decedent Dr. Guiglia, the Italian consul, appointed the company's superintendent to look after the matter. After his appointment, he delayed writing to the widow of the decedent until the time for filing the claim had about expired. In view of these circumstances, and of the further fact that on the hearing before the board the company did not defend on the ground that the claim was not filed with it within one year of decedent's death, we are constrained to the view that the failure to do so was waived.

Wherefore, the judgment is reversed, and cause remanded with directions to return the case to the Workmen's Compensation Board for a hearing on the merits.