## PIONEER COAL CO. v. SPARKS et al.

Court of Appeals of Kentucky.

June 13, 1952.

Hines & Hines, Thomas W. Hines, Bowling Green, for appellants.

Bell, Stagner & Orr, Charles R. Bell, Bowling Green, for appellees.

Patterson & Wilson, Pineville, for appellant.

W. R. Knuckles, W. J. Stone, Pineville,. for appellees.

SIMS, Justice.

Appellee, John Sparks, had his left knee-cap broken in a mine accident on Sept. 16, 1946. In 1942 he had suffered a gunshot wound in his left hip which incapacitated him from work for a couple of years. and caused him to walk with a limp. However, at the time of his accident in 1946, he was, and had been for some years,. efficiently performing the work ordinarily accomplished by a physically sound man.

The Workmen's Compensation Board found that appellee's injuries from the mine accident extended to his body as a whole and caused him to suffer total permanent disability. However, it found that 10% of his disability should be charged to the gunshot wound and that 90% should be paid by his employer. His salary was

sufficient to entitle him to maximum compensation, which at the time of his accident was $18 per week, which the Board awarded him during his temporary total disability as a result of the mine accident, and it then awarded him 90% of $18, or $16.20 per week, for ten years, subject to certain credits paid him for total temporary disability not here in dispute. The Board also awarded him $400 for medical expenses. It was agreed that the only questions to be tried by the Board were the extent and duration of appellee's disability and whether or not his refusal to undergo a second operation on his knee was unreasonable.

The Bell Circuit Court affirmed the award and on this appeal the company seeks a reversal of the judgment because: 1. Sparks unreasonably refused to undergo a second operation on his knee and under KRS 342.035 (2) was thereby deprived of compensation for permanent disability; 2. there was no evidence Sparks incurred any expense for medical treatment, therefore the Board should not have allowed him $400, or any sum, under KRS 342.020; 3. the injury was confined to appellee's leg and under KRS 342.110 the compensation for an injury to his leg cannot exceed the sum allowable for the loss of the leg under KRS 342.105 (19).

After his mine accident in September 1946, Sparks worked at a job, where he was off his feet and sitting down, until February 27, 1947, when he was operated upon by Dr. Wilson, who brought the fractured bones together and wired them. The patient was in the hospital for twenty days and wore a cast on his leg for five months, but the bones did not unite and the operation was not a success. At the suggestion of appellant and upon the advice of Drs. Wilson and Adkins, Sparks went to Knoxville, Tennessee, in September 1947, for an examination by Dr. Bagwell, an orthopedic surgeon, but the patient refused to follow Dr. Bagwell's advice and submit to a second operation on his knee. In February 1948, Sparks again went to Dr. Bagwell who made a complete physical examination of him and again recommended an operation, which the patient again refused.

The second operation was refused by Sparks against the advice of all three of the doctors named above. His reason for refusing was because of a nervous condition, his heart "bothered him a lot", and he was "just a nervous wreck". He gave as a further reason for refusing the operation that Dr. Bagwell told him he could not expect the operation to give him a "stout knee". Dr. Adkins testified the patient was extremely nervous and complained of trouble with his heart but he "rather advised him to take a chance on the operation". Dr. Wilson testified, "I think his chances are very good of taking the operation all right"; and while he did not think the operation would cure Sparks, he was of the opinion it would greatly improve the patient.

Dr. Bagwell testified that he found no evidence of heart trouble when he examined Sparks, whose physical condition was such that there would be no danger to his life from the operation. He could not assure the patient the operation would be "absolutely successful"; nor that one operation would suffice and that it might take several before he could get a union of the bones, "but as a rule it doesn't".

Whether Sparks' refusal to undergo a second operation on his knee was unreasonable was a question of fact and if there is any proof to sustain the finding of the board, the courts will not disturb that finding. Fordson Coal Co. v. Palko, 282 Ky. 397, 138 S.W.2d 456. Manifestly, the Board's finding that Sparks was not unreasonable in refusing to submit to a second operation was based on evidence of substance and of probative value and we will not disturb it. While there was no evidence that the operation would be dangerous to the patient's life, the proof shows the first operation was unsuccessful; that the patient was very nervous and one doctor testified he complained of being "bothered with his heart." Also, Sparks had been told, so he testified, by Dr. Bagwell that if the operation was a success he could not expect a "stout knee", and that the

operation might have to be repeated several times before a union of the bones could be accomplished. In Melcher v. Drummond Mfg. Co., 312 Ky. 588, 229 S.W.2d 52, we held that it was not unreasonable under KRS 342.035 (2) for the injured employee to refuse a second operation for hernia when one of the doctors doubted that a cure would be effected.

■■ We fail to find any evidence in the record that Sparks spent any sum or incurred any bills for medical services, all of which appear to have been borne by the company; therefore the Board should not have made him an allowance of $400 under KRS 342.020. Fame Armstrong Laundry Co. v. Brooks, 226 Ky. 22, 10 S.W.2d 478. The statute just cited provides: "In addition to all other compensation provided in this chapter, the employer shall furnish for the cure and relief from the effects of an injury, such medical, surgical and hospital treatment, including nursing, medical and surgical supplies and appliances, as may reasonably be required at the time of the injury and thereafter during disability, but not exceeding a total expense to the employer of more than five hundred dollars." (At the time of this injury this figure was $400.)

We have construed this statute to mean that the employer will only be required to pay for such reasonable medical services as have been or may be required by reason of the injury. Black Mountain Corp. v. Stewart, 272 Ky. 140, 113 S.W.2d 1141. In Leckie Collieries Co. v. Branham, 275 Ky. 748, 122 S.W.2d 776, 778, we said that if the employer had already paid the medical expenses, the award directing it to do so was without force. In the instant case we construe the award to appellee of $400 for medical expenses to mean that the company is liable for such expense not to exceed that sum. If it has paid appellee's medical expenses, or if it has borne them to the extent of $400, then that "ends the story", as we said in the Branham opinion. If it has not borne appellee's medical expenses, then the company is liable for them to the extent of $400.

It is earnestly insisted by the company that under KRS 342.110 the award to appellee for the injury to his kneecap cannot exceed the compensation allowable under KRS 342.105 (19) for the loss of a leg, which, under the agreement that his wages were sufficient to entitle him to the maximum in 1946, was $18 per week for 200 weeks. The company places its chief reliance on Patton v. Travis, 298 Ky. 678, 183 S.W.2d 956, American Bridge Co. v. Reit, 303 Ky. 795, 199 S.W.2d 447 and Clear Fork Coal Co. v. Carter, 312 Ky. 710, 229 S.W.2d 482. Before discussing these authorities, we will give a short resume of the evidence upon which the Board based its finding for permanent total disability.

■ It is not disputed that at the time of the accident in 1946 Sparks was, and had been for some years, performing the work ordinarily accomplished by a physically sound man. Despite the previous gunshot wound in his left hip which caused him to walk with a limp, he had passed a physical examination when he became an employee of the company. So whatever disability appellee suffered, the Board had ample evidence to say it was caused by the mine accident. Dr. Wilson, the company's physician, when asked, "What per cent disability would you say he had to the body as a whole as a result of this injury?" replied, "He just could not pass a physical examination for work at the mine now". When Dr. Adkins, appellee's physician, was asked the same question, he replied: "I do not know hardly how to answer that. He is not able to work as it is. * * * It would be total as far as your (his) job is concerned under present conditions." This testimony sustains the Board's finding that the injury was to the body as a whole and produced permanent total disability. Kentucky-Jellico Coal Co. v. Jones, 299 Ky. 69, 184 S.W.2d 216.

We now take up appellant's authorities referred to in paragraph second above. In Patton v. Travis, 298 Ky. 678, 183 S.W. 2d 956, 957, it was said the evidence showed an injury to Travis' right hand, and by a slight imposition upon the rule of liberal construction the evidence may be sufficient

to say there was a total permanent disability to his arm; but "there is an utter lack of evidence that his injury affects his body as a whole".

The opinion in the Reit case, 303 Ky. 795, 199 S.W.2d 447, can be of no solace to appellant as there we held an injury to a foot which prevented a structural steel worker from standing on it for long periods, affects the body as a whole and his award should not be limited to the loss of a foot.

It is urged upon us that Clear Fork Coal Co. v. Carter, 312 Ky. 710, 229 S.W.2d 482; United States Coal & Coke Co. v. Jones, 261 Ky. 235, 87 S.W.2d 366; Starks Realty Co. v. French, 267 Ky. 255, 101 S.W.2d 946, and Wallins Creek Collieries Co. v. Jones, 214 Ky. 775, 283 S.W. 1067, sustain the contention that the award in the case at bar should be under KRS 342.110, the section of the act governing permanent, partial disability. These cases do not decide the point in question. They deal with pre-existing disease and injury, while the instant case involves a pre-existing permanent partial disability and a subsequent compensable injury, the combined effects of both injuries resulting in claimant's total permanent disability. Therefore, it is evident that it was mandatory upon the Compensation Board to consider this case under the provisions of KRS 342.120 and thereby determine the apportionment of the liability established by the Board's findings between the employer and the subsequent injury fund which was created under KRS 342.122. We are constrained to reverse the judgment of the circuit court which confirmed the award of the Workmen's Compensation Board for the sole reason that the Board failed to apportion the liability as directed in KRS 342.120.

Since the Board has found as a fact that the claimant is permanently and totally disabled and there is evidence to sustain that finding, we cannot review this finding even if we differed with it. As a consequence, it is not necessary for us to consider the application to this case of KRS 342.110, which governs permanent, partial disability.

While this is not a large record, it is as poorly put together as any we have seen and no effort has been made to comply with our Rule 1.180 which provides for an index at the beginning of an original record brought to this court. This record consists of numerous depositions taken on different occasions, the pages of which are numbered without reference to the record as a whole, which makes it extremely difficult to handle. We criticized such a record in Cornett-Lewis Coal Co. v. Day, 312 Ky. 221, 226 S.W.2d 951, and we likewise criticize this one without repeating what we there said, except we do emphasize the fact that the statute, KRS 342.290, allowing an original record in workmen's compensation cases to be brought to this court does not abrogate our rules as to indexing, 1.150, and numbering the pages of the record, 1.100.

The judgment is reversed.