## Columbus Mining Co. et al. v. Sanders.

Feb. 10, 1942.

Craft & Stanfill for appellants.

Roy Helm for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

Lawrence A. Sanders was employed by the Columbus Mining Company as a coal loader at the time he suffered an injury to his stomach in October, 1937. The final determination of Sanders' case by the Workmen's Compensation Board in December, 1939, was that he was totally and permanently disabled to perform manual labor. He was awarded maximum compensation on the basis of 85 per cent of his disability (the remaining 15 per cent being the result of pre-existing disease), subject to the following proviso:

"The record reveals the fact that some time after plaintiff's last operation the employees of the defendant company elected plaintiff as their check weighman, a position entailing no manual labor or physical exertion. But an employment in connection with the mine in which he was working at the time of his injury that pays him in the aggregate $2.00 more per day than his average daily wage as a coal loader in the mine; and while his pay for this service does not come from the treasury of the defendant company, it comes to him, as we understand, through the office of the company where it is apportioned among the several miners on a tonnage basis, and is thereby so closely connected with, and so much a part of the operation as to have the same effect as if it were derived from and paid out of the treasury of the company.

"Plaintiff's employment as check weighman may or may not be temporary as the miners can retain him if they wish to do so, or retire him at their will. His position as check weighman should not therefore, be considered in determining plaintiff's permanent compensable status, neither should he receive his salary or wage as check weighman and at the same time draw compensation for the injury complained of, and the Board so holds, and in the award

will give the defendant the right to deduct, in the payment of compensation to plaintiff, from the total number of compensable weeks, the number of weeks that plaintiff has or may hereafter receive compensation for his services as check weighman, in an amount equal to or in excess of his weekly compensation.''

Sanders appealed from this ruling of the Board and the Perry Circuit Court ruled in May, 1940, that the award of the Workmen's Compensation Board should be affirmed, except the part thereof which gave the Company the privilege of deducting from the total number of compensable weeks all weeks for which Sanders has received or may receive wages as a check weighman in an amount equal to or in excess of his weekly compensation. The Company prayed an appeal from this ruling, but did not perfect it in the time prescribed. Prior to the time a copy of the judgment was filed with the Clerk of this Court, and an appeal granted by him, the Company filed a motion before the Board to reopen the case. This motion was sustained, but it was finally determined by the full Board that the original award should be upheld (September, 1941).

Sanders has moved that the Company's appeal be dismissed because the appeal which was granted by the Perry Circuit Court was not perfected and because the Company elected to have the Board reopen the case. An examination of the record reveals, however, that the question involved in the reopening proceeding was not the one involved in this appeal. As said in the case of Lincoln Coal Company v. Watts, 275 Ky. 130, 120 S. W. (2d) 1026, the right of an interested party to petition for the reopening of a case under Section 4902 of the Statutes is in addition to and not dependent upon the right to appeal to the courts from the Board's finding. The only question involved in this appeal is whether or not the Perry Circuit Court correctly ruled that there should be no deduction from Sanders' compensation by virtue of his working as a check weighman. The reopening proceeding involved his right to any compensation. It is obvious, therefore, that the motion to dismiss the appeal should be and it is overruled.

The Company insists that the case of Consolidation Coal Company v. Ditty, 286 Ky. 395, 150 S. W. (2d) 672, 673, is controlling here, and therefore the judgment

should be reversed. On the other hand, Sanders insists that the facts and circumstances involved in his case are different from those in the Ditty case, and that it is not applicable here. The Ditty case was a close one. It involved rather unusual circumstances. Ditty was injured while working as a coal loader. His average weekly earnings were about $38. He drew compensation for several months and returned to work cleaning track. He worked at that job for a few weeks and was later given employment as a pumper, and on the basis of a five day week he made $30.60 a week on that job. A dispute arose between him and the Company as to his compensation and he later filed his claim with the Board. The Board found that he was "totally and permanently disabled to again load coal or do other hard manual labor." It ruled, however, that he should be awarded maximum compensation, subject to a credit for the number of weeks in which the Company had paid or might thereafter pay him a weekly wage of $15 or more. In upholding the ruling of the Board we said that we felt that the Board had reached a fair and equitable solution of the case and that:

"We have frequently pointed out that total disability does not mean absolute helplessness or entire physical disability, but rather the loss of one's earning power as a workman, whether manifested by inability to perform work obtainable, or inability to secure work. Leckie Collieries Company v. Branham, 275 Ky. 748, 122 S. W. (2d) 776, and cases cited therein. But we are and have always been reluctant to disturb the Board's finding on such a question, where there is evidence of probative value to support it. We have said that, where there is evidence tending to show that a worker's future usefulness and occupational opportunities were impaired, the question of compensation is for the Board. High v. Liberty Coal & Coke Co., 207 Ky. 197, 268 S. W. 1095."

We also said that we could not escape the conclusion that the Board took into consideration Section 4900 of the Statutes in the final determination of Ditty's case, and that its finding was not that Ditty was incapacitated from doing any work, but rather from loading coal and doing other hard manual labor, and:

"* * * In effect, the Board found that Ditty

was able to do the work of pumper. It went further and directed that the Company furnish to Ditty suitable employment or pay him the maximum compensation at the rate of $15 a week. The question is, Does the evidence in the record support this finding? We think that it does, for, as pointed out in the High case, once it is established that there is evidence to support the Board's finding, the question of awarding compensation addresses itself to the Board and not the courts; though, as we have indicated, we think the Board arrived at a fair and equitable solution of Ditty's case.''

We are not disposed to go beyond our ruling in the Ditty case. There an employer furnished suitable employment for an injured employee. First he was tried out as a track cleaner and later given a job as pumper which the injured employee said he could perform satisfactorily. Furthermore, the Board's finding was that Ditty was ''totally and permanently disabled to again load coal or do other hard manual labor.'' All the facts and circumstances were before the Board and we said that we could not escape the conclusion that the Board took into consideration Section 4900 of the Statutes which relates to the furnishing of suitable employment to an injured employee by his employer.

In the case before us the Board found that Sanders was ''totally and permanently disabled to perform manual labor,'' and not that he was disabled ''to again load coal or do other hard manual labor.'' True it is that the Board had before it the fact that Sanders' former fellow workers had selected him as their representative to serve as check weighman; but there does not appear to have been any effort on the part of the Company to furnish him any form of employment, so Section 4900 of the Statutes does not come into the picture. We fully appreciate the Board's efforts in attempting to arrive at an equitable disposition of the case, but we can not agree with its conclusion that the mere fact that Sanders' pay passes through the books of the Company makes his work so closely connected with that of the operation of the mine as to produce the same result as if his pay were derived from and paid out of the treasury of the Company. It is the prerogative of the miners to choose a check weighman, and the employer has nothing whatever to do with this. This check weighman is in no sense paid

by the Company, but rather is paid by fixed contributions of the miners. Sympathy on the part of his fellow workers and union members may or may not have played a part in Sanders' selection as check weighman. In either event, he serves at their pleasure and we do not feel that any deduction should be made from his compensation by virtue of employment of this character. While the case of Fulton Ice Company v. Meacham, 273 Ky. 483, 117 S. W. (2d) 195, 197, is not on all fours with this case, we think the views expressed therein on a similar question are pertinent here. That case reflects the attitude of this Court on the general proposition involved herein. In the Meacham case it was said:

"Some point is made of the fact that subsequent to the accident Meacham obtained employment as a watchman at a lumber yard, and it is argued that this shows he is not totally disabled. Total disability does not mean absolute helplessness. Olson v. Triplett, 255 Ky. 724, 75 S. W. (2d) 366. The evidence shows that appellee is unable to do manual labor, the only kind of work he is fitted to perform, and the fortuitous circumstance that he was able to obtain employment, as a watchman, probably temporarily, should not defeat his claim."

It follows from what has been said that the judgment should be and it is affirmed.