## Kentucky-Jellico Coal Co. v. Jones.

### Dec. 15, 1944.

Hiram H. Owens for appellant.

R. L. Pope and C. B. Upton for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CAMMACK —Affirming.

Lee Robert Jones, age 28, received an injury to his left leg in a slate fall in one of appellant's mines in August, 1941. His left femur was fractured about midway. Vitallium plates were used to hold the bone together and his entire left leg was placed in a cast. He remained in the hospital for three months. Before he left the hospital the cast was removed and he walked around on crutches for about five months and then used a walking stick for a few months. Jones was paid full compensation for about a year. At the end of that time employment was offered him, but he refused it, saying he was unable to work. He then filed his claim with the Board.

Jones' testimony was to the effect that he had been unable to perform manual labor since his injury; he can not bend his left knee sufficiently to load coal; his

left foot is turned out about an inch and a half and he walks with a limp; and his left ankle is stiff also and he suffers constant pain in his left leg which is about an inch shorter than the other. Dr. Ausmus, who testified for Jones, examined him about 13 months after the injury. He found marked atrophy of the left thigh muscles and ankylosis of the right knee; the left leg was an inch shorter than the right; there was marked limitation of the knee joint; and Jones walked with a noticeable limp. It was this doctor's opinion that Jones' condition was such at the time he examined him that he was unable to perform hard manual labor, because of the weakness and shortness of the left leg and the condition of the left knee. He placed his disability at total.

Drs. Stacy and Bagwell testified for the Company. Dr. Stacy said he had seen Jones on several occasions and that when he examined him in December, 1942, he appeared to be able to work. He said Jones was a frail-looking young man; there was marked atrophy of the muscles of the left leg which was caused by his failure to use it; the leg would improve as it is used; and he found no shortness of the left leg, though Jones walked with a limp. When asked as to the extent of Jones' disability from the time he was injured, Dr. Stacy said: "I think the patient had temporary total disability for about the period of seven months following injury. Then for a period of five months he should have fifty per cent disability, and at that time he should have been actually using the leg with a permanent disability of about twenty per cent. I do think most of the lack of activity and lost motion in the joints had resulted from failure to cooperate with the physicians." He said also the leg would improve with use, though use would produce pain for a while. Dr. Bagwell examined Jones in Knoxville in April, 1943. He found partial stiffness of the left leg; numbness of the lateral surface of the leg; stiffness in the left ankle; and noticeable atrophy of the thigh and leg muscles. He said Jones had a drop foot which caused him to walk with a limp as would an infantile paralysis victim. He also found an area of numbness over the peroneal nerve which was probably the cause of the drop foot. He thought this condition could be improved greatly by an operation. It was Dr. Bagwell's view that practically all of Jones' disability was due to the drop foot. He

placed his disability at 40 per cent due to paralysis in his leg muscles and inability to walk without difficulty. On cross-examination he said that Jones was the best judge as to his pain and suffering, and that he did not find he was able to do hard manual labor.

The Board found that ''in his present condition Jones was permanently disabled to perform hard manual labor in a coal mine.'' He was awarded full compensation, but the Company was to be relieved from paying compensation for the number of weeks during the compensable period that it furnished Jones employment suited to his physical condition at a wage equal to or in excess of maximum compensation.

The principal ground urged for reversal is that compensation should have been awarded only for disability to Jones' left leg, and that in no event should full compensation have been awarded.

Reliance is placed upon the case of Kentucky Cardinal Coal Corporation v. Delph, 296 Ky. 295, 176 S. W. 2d 886. In that case we held that Delph's compensation should be restricted to an allowance for the loss of a hand, because that was the only part of his body which was injured. There seems to have been no contention made before the Referee or the Board that compensation should be allowed Jones only on the basis of an injury to his left leg as a whole. True it is that Dr. Stacy placed Jones' disability at 20 per cent, but an examination of his evidence does not warrant the contention that he was restricting it to the leg as a whole. Dr. Bagwell placed the disability at 40 per cent, but said also that Jones was unable to do hard manual labor. Certainly he was not speaking of a partial disability to the leg as a whole. It seems clear to us that whatever award was justifiable should have been made on the basis of disability to the body as a whole. The recent case of Schaab v. Irwin, 298 Ky. 626, 183 S. W. 2d 814, presents a somewhat similar situation. See also Patton v. Travis, 298 Ky. 678, 183 S. W. 2d 956, for a discussion of the general proposition.

A careful analysis of all the medical testimony shows that Jones' condition should improve. Even Dr. Ausmus confined his estimate of disability to his ''present condition.'' We are frank to say that were we faced with an outright award of total compensation we would be inclined to the view that it could not be upheld.

But we do not construe the Board's finding as placing Jones' disability at total permanent, but rather it was determined that he was totally and permanently disabled to do hard manual labor and the Ditty rule was applied. Consolidation Coal Co. v. Ditty, 286 Ky. 395, 150 S. W. 2d 672. As pointed out in that case and others in which the application of the rule has been approved, we have said, in effect, that the Board found the injured employee was able to perform work suitable to his physical condition. Of course, it is for the Board and not the Company to determine the suitability of the work. As we have said, the Board has already found Jones is able to work in some capacity, and, if a suitable job is furnished him and he refuses to perform it, the Company will not be obligated to pay him compensation. KRS 342.115. If Jones' condition improves, as the evidence shows it should, the Company can ask that the case be reopened. KRS 342.125.

Under the circumstances we think the judgment should be and it is affirmed.