**E. & L. TRANSPORT COMPANY, Inc.,**
Appellant,

v.

**William David HAYES et al., Appellees.**

Court of Appeals of Kentucky.

Dec. 16, 1960.

Armer H. Mahan, Davis & Mahan, Louisville, for appellant.

William C. Edrington, Louisville, for appellees.

CULLEN, Commissioner.

By order of the Workmen's Compensation Board William Hayes was awarded compensation for total permanent disability resulting from post-traumatic epilepsy. On appeal to the circuit court by his employer the order was affirmed. The employer has appealed to this Court from the circuit court judgment.

The appellant concedes that the evidence was sufficient to sustain the board's finding that Hayes' epileptic condition resulted from an accident that occurred in his employment. However, the medical testimony was sharply conflicting and the appellant maintains that the board erred in overruling a motion that Hayes be directed to report to a named doctor for an electroencephalogram.

It appears that Hayes had submitted to a physical examination by a neurological

surgeon selected by the appellant, and also had been examined by three other neurological surgeons selected by him, one of whom had taken an electroencephalogram which was reported as normal. Since the normal report was favorable to appellant's contention that Hayes was not suffering from epilepsy (but from an emotional disturbance) it is difficult to see how the taking of another electroencephalogram, which the appellant could only hope would also be reported as normal, could have been of any help to appellant's case.

■ Appellant argues that despite the fact that Hayes had submitted to a neurological examination by one doctor of its choice, it had the unqualified right under KRS 342.205 to require him to submit to further examinations. We do not construe this statute as meaning that during the course of a hearing on a compensation claim the employer is entitled to have examinations by as many physicians as he chooses. We think the matter of additional examinations is within the board's discretion and we find no abuse of that discretion in the instant case.

The main contention of the appellant is that Hayes was not in fact totally disabled from work and the board did not find him to be totally disabled from work, but found only that he was disabled "as a truck driver," and therefore he was not entitled to compensation for total disability.

Hayes' condition as found by the board was that he suffered from blackout spells and a general mental dullness, with lack of ability to concentrate or maintain a continued line of thought. The only doctor who was asked to express an opinion as to the disabling effect of this condition said that Hayes was totally disabled to perform any occupation involving the driving of a motor vehicle.

Prior to his accident Hayes was employed as the operator of a drive-away truck hauling new cars from manufacturer to dealer. After the accident he worked for a time as a dockman, then resumed driving the truck for several months, but with unsatisfactory results. At the time of the hearing on his claim he was employed at the appellant's terminal with the principal duty of filling trucks with gasoline.

The appellant argues that since Hayes is able to work as a dockman or a "gasser" he is not totally disabled; that KRS 342.095 requires a finding of total disability "for work" as a condition of an award of compensation for total disability; and that it is not enough that he be disabled only to perform the particular job he formerly held. The appellant says that this Court has wandered erroneously into the application of an "occupational" theory of total disability that has no basis in the statute.

We do not find it necessary to consider the question of whether an employe who is totally disabled from work in the general occupational classification which he had achieved by training and experience at the time of his injury is ineligible for total disability compensation if he has full ability to work at a job requiring no training or experience or one for which he could become qualified by future training. The question actually presented is whether the employe is disqualified from receiving total disability compensation if his ability to perform other work is an *impaired* ability.

Here it is evident that Hayes not only is totally disabled from following his former occupation but his condition is such that he cannot compete in the labor market for any work other than such as is capable of being performed by impaired or handicapped persons.

■ Our previous decisions under KRS 342.095 stand for the proposition that if a workman is totally disabled from the performance of work in his former occupational classification and his capacity to perform other kinds of work is impaired, he is entitled to compensation for total disability. See Clark v. Gilley, Ky., 311 S.W.

2d 391; Anderson v. Whitaker, Ky., 247 S.W.2d 980; Cornett-Lewis Coal Co. v. Day, 312 Ky. 221, 226 S.W.2d 951; Black Mountain Corporation v. Letner, 303 Ky. 807, 199 S.W.2d 611; Olson v. Triplett, 255 Ky. 724, 75 S.W.2d 366. We think this is the proper interpretation of the statute, and it sustains the award of compensation for total permanent disability to Hayes.

While the board's finding recited only that Hayes was disabled "as a truck driver" the evidence would require the conclusion that his ability to perform other work was impaired, so the quoted words may be considered mere surplusage.

The final contention of the appellant is that under the "Ditty Rule" the board should have allowed credit against the compensation payments for weeks in which the appellant employed Hayes after his accident at wages equal to or exceeding the wages he formerly received. We welcome this opportunity for a reexamination of the "Ditty Rule."

The "rule" originated in Consolidation Coal Co. v. Ditty, 286 Ky. 395, 150 S.W.2d 672, 673. There the compensation board found the employe was totally disabled to do hard manual labor and awarded compensation for total permanent disability, but directed that credit be given against the compensation payments for the weeks in which the original employer continued to employ the injured man at wages equal to the weekly *compensation payment*. This Court, in affirming the order of the board, concluded that the board had given consideration to KRS 342.115 and that the board's solution of the case was "fair and equitable."

Subsequent cases applying the so-called rule gave indication that its basis was in KRS 342.115. See Black Mountain Corporation v. Gilbert, 296 Ky. 514, 177 S.W. 2d 894; Lawson v. Wisconsin Coal Corporation, 290 Ky. 375, 161 S.W.2d 600; Warner v. Lexington Roller Mills, 306 Ky. 142, 206 S.W.2d 471, 175 A.L.R. 722.

As the rule developed, two conditions were placed upon the allowance of credit for subsequent employment. One was that the subsequent employment must be by the original employer. See Columbus Mining Co. v. Sanders, 289 Ky. 438, 159 S.W.2d 14; Schaab v. Irwin, 298 Ky. 626, 183 S.W. 2d 814. The other was that the wages paid in the subsequent employment must equal the *wages* formerly paid. Warner v. Lexington Roller Mills, 306 Ky. 142, 206 S.W. 2d 471, 175 A.L.R. 722; Browning v. Moss Williams & Co., 306 Ky. 520, 208 S.W.2d 495.

Although the original Ditty case was one in which compensation had been awarded for total permanent disability, and in several subsequent cases, such as Black Mountain Corporation v. Gilbert, 296 Ky. 514, 177 S.W.2d 894, and Kentucky-Jellico Coal Co. v. Jones, 299 Ky. 69, 184 S.W.2d 216, the Ditty Rule was applied where the award was for total permanent disability, the statement was made in other cases that the Ditty Rule *never* applied where the injury resulted in total disability. See Hall v. Black Star Coal Co., 296 Ky. 518, 177 S.W. 2d 900; Mary Helen Coal Corp. v. Dusina, 308 Ky. 658, 215 S.W.2d 563; Anderson v. Whitaker, Ky., 247 S.W.2d 980. The only way this can be explained is that in fact the rule had been applied in cases of awards for total disability only where the *compensation board* had directed credit to be given for wages paid in subsequent employment. The theory apparently was that in such cases the board had not really found the employe to be totally disabled for *all* work, but had found him to be capable of doing *light* work, and that the giving of credit for subsequent wages was some sort of a reconciliation between KRS 342.095 and 342.115. However, in cases where the board had found total disability and had not directed credit, the *court* would not direct that credit be given because of a theory that in such cases the board had found a true total disability.

While, as stated, the Ditty Rule originated in a total disability case, it soon

was extended to partial disability cases. See Lawson v. Wisconsin Coal Corporation, 290 Ky. 375, 161 S.W.2d 600. And although the court had never found the rule applicable in a total disability case except when the compensation board had chosen to apply it, the court saw no inconsistency in ordering the board to give credit in a partial disability case where the board had not applied the rule. See Warner v. Lexington Roller Mills, 306 Ky. 142, 206 S.W.2d 471, 175 A.L.R. 722.

Finally, in 1952, the legislature abolished the Ditty Rule, as far as partial disability cases were concerned, by an amendment to KRS 342.110. Left unanswered by the legislature was the question of whether the rule still has some application in total disability cases.

Having stated the history of the Ditty Rule, we now propose to reexamine the question of its soundness.

It appears that our cases have indicated only two possible bases for the rule. One, as stated in the original Ditty case, is that it is "fair and equitable." Frankly, we are at a loss to see how fairness and equity have anything to do with the judicial construction of a legislative enactment, which really is what is involved in determining whether an employer is entitled to credit under the Workmen's Compensation Act for wages paid in subsequent employment.

The other basis for the rule, as hereinbefore indicated, lies in an interpretation of KRS 342.115. That statute is as follows:

"If an injured employe refuses employment reasonably suited to his capacity and physical condition procured for him, he shall not be entitled to compensation during the period of such refusal unless, in the opinion of the board, such refusal was justifiable."

The court reasoned that this statute, in converse, must mean that if the employe does accept suitable employment he also is not entitled to compensation. However, the court engrafted two qualifications upon its converse construction, one being that the employment must be by the original employer and the other that the wages must equal the former wages.

We think that the effect that has been given to KRS 342.115 is wholly unwarranted. In the first place, the statute neither says nor necessarily implies that if the employe *does* accept a job he forfeits his compensation during the period of the employment. A reasonable and logical purpose of the statute would be simply to encourage injured workmen to accept such gainful employment as might be offered them, rather than to sit idle, contemplating their misfortunes. It may be considered merely a kind of rehabilitation measure, instead of a means of reducing compensation liabilities. The provision for deprivation of compensation for refusal to work is nothing more than a form of coercive penalty.

In the second place, there is absolutely no basis for the two qualifications the court has engrafted upon the statute. Nowhere in the statute is there even a remote indication that the employment must be offered by the original employer and the wages must equal the former wages. Under the clear words of the statute, if *anyone* offers the injured man a suitable job, at *any* wage, he loses his compensation if he refuses the job (unless the compensation board finds some justification for the refusal). This being so, not only are the qualifications created by the court completely baseless, but the very idea that the statute works in reverse becomes unacceptable.

In addition to the fact that the Ditty Rule has no sound basis, its application in total disability cases (the only cases to which it possibly could apply following the 1952 amendment to KRS 342.110) results in the creation of a hybrid category of disability not recognized by the compensation statutes. In effect, in the total disability cases in which the rule was held applicable by this Court, the reasoning was that the compensation board had not really found

the workman to be totally disabled. Nevertheless, the Court *upheld* the award of compensation for total disability. Under no theory can this be justified.

■ We now declare the complete abolition of the Ditty Rule. The cases which have announced and followed it are overruled.

The judgment is affirmed.