**GREEN VALLEY COAL COMPANY,**
Appellant,

v.

**Arlie CARPENTER and the Workmen's Compensation Board, Appellees.**

Court of Appeals of Kentucky.

Dec. 17, 1965.

Robert L. Milby, Hamm, Taylor & Milby, London, for appellant.

Lester H. Burns, Jr., Manchester, Charles M. Tackett, Lexington, for appellees.

DAVIS, Commissioner.

Appellee, Arlie Carpenter, obtained an "open-end" award based on a finding by the Workmen's Compensation Board that appellee was totally disabled (at the date of the Board's award, November 9, 1964). The Board found that it could not determine, "with any degree of medical certainty, the degree of the permanency of * * * disability," and provided that the matter may be re-examined pursuant to KRS 342.-125. The Board's award was affirmed in the circuit court, precipitating the present appeal, wherein appellant advances four alleged errors as warranting reversal: (1) The amount of the award was greater than

authorized by statute and proof; (2) the Board erroneously determined the former occupational classification of appellee; (3) the Board erroneously failed to require an apportionment of liability as prescribed by KRS 342.120; and (4) the appellee failed to timely give notice of his injury.

The appellee testified that on January 26, 1963, while he was engaged in his employment for appellant company, shoveling debris resulting from a collapse of a drift mouth, he " * * * felt a sharp pain in his back." He finished the day's work. We are not told at what hour he experienced the pain. Appellee returned to work the next day, feeling all right, and continued to work for "about a week" when he had a pain "start in my hip here," he said. Nevertheless, he worked "about another week" at which time his discomfort impelled him, on February 11, to consult Dr. Stanley Hammons in Manchester. Dr. Hammons did not testify in the hearing before the Board.

Dr. Hammons referred appellee to Dr. W. K. Massie, an orthopedic surgeon at Lexington. It was on February 15, 1963, that appellee was first examined by Dr. Massie. Upon his original examination, Dr. Massie gained the impression that appellee had a prolapsed disc at L4-5 (in the space between lumbar vertebrae four and five). However, a discogram disclosed the suspected area to be normal, with the entire trouble at L-5, S-1 space—the space between the fifth lumbar vertebra and the sacrum. Dr. Massie performed surgery upon appellee on February 21, 1963, during which operation the disc at L-5, S-1 was removed. The removed disc was described by Dr. Massie as a "prolapsing disc." A fusion was performed at L-5 to the sacrum. Appellee remained hospitalized from February 15 to March 2, 1963.

Appellee was seen by Dr. Massie as an out-patient, beginning on March 8, 1963, at intervals about one month apart. Dr. Massie observed that the fusion procedure was satisfactory, and the patient made reasonable progress in recovery. However, as late as June 29, 1964, when Dr. Massie last saw him, the appellee had not returned to any regular work. It was the opinion of Dr. Massie that appellee could return to work, but on a "temporary partial impairment basis." As expressed by Dr. Massie: "I felt it would require considerable work reconditioning, not just rehabilitation to get this man back to normal work tolerance on an eight hour shift."

Dr. Massie further testified that he regarded appellee as having a permanent disability, since the spinal fusion eliminated movement of one space in his back. In Dr. Massie's opinion the percentage of impairment to the body as a whole equals 15%. However, Dr. Massie pointed out that he had seen X-ray changes in appellee's spine which would require several years to develop; these he characterized as "degenerative changes." It was the expressed opinion of this medical witness " * * * that one-third, or 5% to the body as a whole pre-existed his injury, and two-thirds, or 10%, to the body as a whole was a direct result of his injury." It was recognized by the doctor that appellee had worked "asymptomatically" prior to the injury— that is to say, that his prior condition had been quiescent and non-disabling. It should be noted that Dr. Massie expressed the view that appellee could have worked as a truck driver as early as November, 1963, although his evidence leaves the impression that in any event the appellee would have to gradually adjust himself to work—he could not be expected to re-enter performance of full time regular heavy work duties.

Opposing this, appellee said that he had driven a truck on a few occasions since the operation, but that this caused him extreme discomfort. When asked why he could not drive a truck, he responded: "Because I have to brace myself and hold myself up. My leg is weak, and I can't jump in and out and load one."

Dr. Marion G. Brown testified for appellee, but this witness did not examine appellee until February 18, 1964—more than

a year after the injury complained of. Dr. Brown made X-rays of appellee and expressed the opinion that the fusion at L–5, S–1 appeared solid. Dr. Brown made this summary: "This patient has a L–5 disc operation and very good fusion following this and I can see no reason why he should not be able to be rehabilitated with a reasonable chance of returning to his regular work." Dr. Brown stated that the requisite rehabilitation had not been achieved when he examined appellee. Dr. Brown estimated that appellee is permanently partially disabled to the extent of 15% to 20% to the body as a whole. Dr. Brown stated that in his judgment all of this disability was due to the injury. The doctor further said that in his judgment appellee was temporarily totally disabled at the time of the examination in February, 1964.

On the critical question whether any of appellee's disability could have arisen from a pre-existing condition, Dr. Brown stated that he had not seen the prior X-rays of appellee and, therefore, could not evaluate the status of his spine prior to the accident. After remarking upon the fact that appellee had been able to work without discomfort before the accident, Dr. Brown continued: "However, the injury event had he had a perfectly normal back might not have caused as much disablement. It brings up the point of whether some pre-existence might be a factor in this case and if the X-rays that were made after the injury were made available to me I could probably throw a little more light on the subject."

■ We turn to the first question raised by appellant—whether the award of $38.00 per week was justified. The point rests on the evidence of appellee that he earned $1.25 per hour and worked "forty sometimes forty-five" hours per week. By the terms of KRS 342.095, in force at the pertinent period, the award may not exceed 65% of the worker's average wage, with a ceiling of $38.00 per week. Accordingly, appellant argues that in no event should appellee have an award in excess of $32.50

(computed on a forty-hour week). Appellee concedes that he is not entitled to $38.00 per week, but asserts that he is entitled to $36.56—based on a forty-five hour week. In light of KRS 342.140, which defines "at full time" as "a full working day for five days in every week of the year regardless of whether the injured employee actually worked all or part of the time," we concur with the view advanced by appellant and hold that the award's maximum should have been at the rate of $32.50 per week. (Based on forty hours per week @ $1.25 per hour, to which is applied the 65% factor.)

■ We do not consider that the Board erred in respect to the former occupational classification of appellee. It is true that he had worked as a mine employee for only about two years just before his injury, and that he had worked as a truck driver for somewhat longer. There is other evidence indicating that he may have done farm work also. It is apparent, however, that his occupational classification was in the mining industry *and* his capacity to perform other kinds of work is impaired. Really, the occupational classification for appellee may be said to be "heavy labor." That he is impaired in its performance is undisputed. This view is supported by our decisions in Clark v. Gilley, Ky., 311 S.W.2d 391; Leep v. Kentucky State Police, Ky., 366 S.W.2d 729, and E. & L. Transport Co. v. Hayes, Ky., 341 S.W.2d 240, 84 A.L.R.2d 1102.

■ The third challenge to the judgment presents a more difficult problem. The Board made no apportionment of liability as between the appellant employer and the Subsequent Injury Fund. KRS 342.120. Apparently, the Board concluded that the evidence of Dr. Brown was adequate to support a finding against apportionment— or else the Board considered that the question of apportionment should be postponed until the temporary total disability had terminated. It is our view that the question of apportionment must be resolved, because the testimony of Dr. Brown is not of the

quality to offset the forthright testimony of Dr. Massie. It will be recalled that Dr. Brown admitted frankly that he was not in position to evaluate the question of pre-existing disease condition because he had not had opportunity to examine the X-rays made just after the injury. Opposing this, Dr. Massie did examine the patient and the X-rays just after the injury and gave an unequivocal opinion that one-third of the disablement was attributable to the pre-existing condition. In this state of case, the evidence of Dr. Brown will not serve to refute the evidence of Dr. Massie. Rudder v. Ohio State Life Insurance Co., Ky., 389 S.W.2d 448; Grimes v. Goodlett & Adams, Ky., 345 S.W.2d 47.

The testimony of Dr. Massie does leave question, however, whether the "degenerative process" he described may be equated with a "disease condition" as referred to in KRS 342.120(1) (b). Many varied definitions of "disease" appear in the decided cases. Cf. Words & Phrases, "Disease". We think our decisions warrant the conclusion that the degenerative process described by Dr. Massie is equatable with "disease condition." It is to be noted that we have said that "industry takes a man as it finds him"—that the benefits of the Workmen's Compensation Act are not restricted to employees in prior good health. See Inland Steel Co. v. Mullins, Ky., 367 S.W.2d 250, and authorities there cited and discussed.

Turning to the question of timely notice, we hold that the notice given in this instance was sufficient. The appellee did not know—nor could he be expected to know—the cause and source of his discomfort. As soon as he had a diagnosis of it from a competent physician he did notify his employer; this notification occurred less than a month after the injury. The rationale of Inland Steel v. Mullins, Ky., 367 S.W.2d 250, on the question of notice is dispositive of the point here.

The judgment is reversed with directions to remand the case to the Workmen's Compensation Board for appropriate adjustment of the weekly benefits to a sum not exceeding $32.50; for appropriate procedure looking toward an apportionment of liability, and for such further procedures as may be proper respecting the duration of temporary total disability.