**CLAY COAL CORPORATION and the Travelers Insurance Company, Appellants,**

**v.**

**Anderson ABNER and Workmen's Compensation Board, Appellees.**

Court of Appeals of Kentucky.

March 25, 1966.

WILLIAMS, Judge.

Appellee Anderson Abner, 23 years of age, sustained an injury to his back on October 2, 1962, as a result of pushing a two-ton coal car in appellant Clay Coal Corporation's mine. The Workmen's Compensation Board made an "open-end" maximum award to appellee based on a finding that he was totally disabled. This appeal is from a judgment of the Clay Circuit Court affirming the award.

The first alleged error is that the Board awarded compensation in a greater amount than that shown by the evidence. The only testimony in the record as to appellee's wages is as follows:

"Q 140. What was your average weekly wages there when you worked full time?

A $50.00 to $60.00 when I worked full time.

"Q 141. Could you give us an average figure?

A I would say around $50.00 a week, I averaged all the time.

"Q 142. Was that when you worked full time?

A No, not when I worked full time.

"Q 143. What I want to know is, if you worked full time every day what would you average every week?

A $60.00."

That testimony is sufficient to sustain an award based on the average weekly wage "at full time" of $60.00, pursuant to KRS 342.140. See Green Valley Coal Co. v. Carpenter, Ky., 397 S.W.2d 134.

The second issue raised is whether there was sufficient competent testimony to justify the finding of the Board that the disability was a direct result of the injury

Robert L. Milby, Hamm, Taylor & Milby, London, for appellants.

Neville Smith, Manchester, for appellees.

sustained and not partially the result of any pre-existing diseased condition.

Appellee was referred to Dr. W. K. Massie, an orthopedic surgeon at Lexington, who first saw appellee on November 14, 1962, and on the 15th of November a discogram was done. Dr. Massie testified that the discogram showed degeneration of the disc at L–5, S–1. After three days of hospitalization and several other visits to Dr. Massie, appellee was given another discographic examination on February 18, 1963. This examination showed little degeneration, if any, and "was interpreted as a normal outline." At one point in his testimony Dr. Leonard A. Goddy, the Board-appointed doctor, stated: "If degeneration of the disc space were found shortly after the accident, then I would say that there was some degree of degeneration present prior to the accident."

Appellee's contention that his disability resulted *solely* from the injury sustained is based upon testimony of Dr. Marion G. Brown, who stated: "It's medically reasonable that this injury is the cause of his disability, and this is my opinion." Also, Dr. Goddy, in response to the question, "Have you an opinion as to whether or not all of the condition of disability which you find is a result of the traumatic incident of October the 2nd, 1962?" stated: "I would say that the physical findings that we found at the time of the examination would certainly be consistent with an injury such as the man described he sustained in October of 1962." The record also includes Dr. Joseph Keith's testimony to the effect that no degeneration was indicated, either pre-existing or present.

■ Since Dr. Massie stated that after making the second discogram he found no degeneration of the lumbo-sacral disc, and since there was positive testimony that the disability resulted from the injury rather than any pre-existing condition, we find that there was substantial evidence to support a finding that the disability resulted solely from the injury. Consequently there was no requirement that the Board make an apportionment.

■ Appellant also contends that the evidence is not sufficient to sustain an award of total disability. However, there was testimony that appellee was totally disabled to resume the occupation which he held at the time of the injury. Dr. Marion G. Brown testified: "I would not recommend that he return to heavy work in the mines yet, but probably would want to try him in six or eight weeks after a built-up (sic) program." Dr. Goddy also testified: "At the present time I feel that he could probably not resume that occupation he had at the time of the injury." Certainly there was substantial evidence to sustain an award, and the Board chose to believe it over rebutting testimony.

The judgment is affirmed.