**C. Leslie DAWSON, Commissioner, Department of Economic Security, Appellant,**

**v.**

**Mary Nell DRIVER, Appellee.**

Court of Appeals of Kentucky.

Nov. 3, 1967.

Robert Matthews, Atty. Gen., Paul E. Tierney, Forest Smith, Dept. of Economic Security, Frankfort, for appellant.

Robert C. Carter, Glasgow, for appellee.

PALMORE, Judge.

This is an appeal by the Commissioner of Economic Security from a judgment of the circuit court overturning an order of the appeal board affirming a referee's decision to the effect that the appellee, Mary Nell Driver, was not eligible to receive public assistance for the support of her three dependent children. KRS 205.200, 205.231.

KRS 205.200(2) authorizes and directs the Commissioner to prescribe by administrative regulation, in conformity with the Social Security Act and federal regulations promulgated thereunder, the conditions of eligibility for public assistance. By appropriate regulation the definition of "needy child" set forth in KRS 205.010(5) has been particularized to mean a child who is deprived of parental support by reason of the death, continued absence, or incapacity of a parent. In like manner the term "incapacity" has been limited as follows:

"If incapacity of the father is involved, the incapacity must prevent him from working in an occupation in which he previously engaged, and prevent him from working at another job accessible in the county or community where he normally resides, for which [sic] he is equipped to do * * *. If a job opportunity exists * * * it shall be considered accessible irrespective of its immediate availability. In other words

scarcity of work opportunities or inability to find work are insufficient grounds for a determination of eligibility unless there is a causal relationship between the current unemployment and the alleged incapacitating condition." Regulation PA–58, Department of Economic Security (eff. July 27, 1961).

The ground on which the referee and the appeal board denied the application for relief is that James Bethel Driver, father of the three children, is not incapacitated within the meaning of the quoted regulation. Fully mindful of KRS 205.234(3), which confines the circuit court's review to a determination, from the record certified to it, of whether (a) there was sufficient probative evidence to support the board's order, (b) the dispositive regulations are reasonable, and (c) the board acted arbitrarily, unlawfully, or in abuse of its discretion, the learned chancellor concluded that under the evidence in the record Driver was incapacitated as a matter of law.

■■■ As pointed out in Lee v. International Harvester Company, Ky., 373 S.W. 2d 418, 420 (1963), there are some cases in which no evidence whatever is required in support of a negative finding against one who bears the burden of proof before a fact-finding body. For example, if no evidence has been offered in a claimant's behalf, obviously a denial of the claim would need no defensive evidence to support it. The same is true whenever the claimant's evidence is not sufficiently persuasive to require a favorable finding as a matter of law. Since the claimant had the burden of proof in the administrative proceeding, the question before the circuit court in this case was whether, under the whole state of the evidence in the record, it was unreasonable and thus an abuse of discretion for the board to deny the claim. Applied to the particular fact situation, is there room for a difference of opinion among reasonable minds as to whether Driver, the father, is "incapacitated" within the meaning of the term as it has been defined by the regulation?

At the time of the hearing in April of 1965 Mr. Driver was 42 years old. He has a fourth-grade education. The only work he has ever done for a living has been as a common laborer. Prior to 1959 he had worked as a sawmill laborer, farm laborer, and hod carrier. In 1959 it was discovered that he had pulmonary tuberculosis. This led to surgery in 1961, by which one of the lobes of his right lung was removed. Shortly after the operation he developed a muscular twitching or spasm in the right scapular area. It bothers him all the time and he takes various medicines to palliate it. He worked for a day or two in the winter of 1963–1964 packing tobacco at a warehouse, but found it was too strenuous and could not stand inhaling the tobacco dust. He has applied for work at a cabinet-making plant but was told there was no opening at the time. One of the reports filed by a social worker for the Department indicates, however, that on the latter occasion he was advised that employment might be available later. There was filed in the record a "To whom it may concern" statement from the county judge of Barren County dated March 26, 1965, to the effect that from "my observation James Bethel Driver is a man who wants to work and make a living for his family. It is my opinion that he is unable to do so because of the surgery he has had." Another such statement by a local physician, dated January 14, 1964, is as follows:

"Bethel Driver apparently has arrested tuberculosis and has a nerve lesion, causing a twitching and pain, which followed lung surgery. These two disorders place a stigma upon him, as far as obtaining employment. It is felt that his family should not suffer until rehabilitation procedures can be worked out for him."

Still another local physician signed a similar statement on April 7, 1965, that "Bethel Driver has a disabling nerve condition of right chest following chest surgery. Doubt he is able to do manual labor."

On October 3, 1963, Dr. William F. Meacham, a neurological surgeon at Vanderbilt University, had examined Driver and reported in part as follows:

"There is no organic neurological basis for this type of intermittent muscular contraction and [sic] is a manifestation of a functional disorder. This man can and should be rehabilitated. * * * In due course with appropriate readjustment and rehabilitation of this man, I think he could be cured and I recommend that some employment be considered for him within the range of his current physical ability. There are no neurological deficits existing at the moment that would preclude his doing anything other than very strenuous manual, physical labor."

On April 14, 1964, Dr. Paul A. Pichardo, director of the state TB hospital at Glasgow, re-examined Mr. Driver and entered a report concluding: "The patient is disabled for any form of gainful employment due to painful clonic contraction of the right Latissimus Dorsi, residual of previous resectional surgery on the right."

Faced with these apparently contradictory medical reports, the appeal board on April 28, 1964, held the Driver family eligible for public assistance subject to the qualification that a re-evaluation be made within six months.

Dr. Meacham examined Mr. Driver again in September of 1964 and found "no appreciable change." He elaborated as follows:

"I have re-examined him and find absolutely the identical situation which is, in my opinion, mostly a psychosomatic type of disturbance and not an organic neurological difficulty.

"This man is poorly motivated. He is doing such work about the house as mowing the yard, and raising a garden, but steadfastly states that he could not do any other form of work. He also indicates that the state is the cause of his condition and that

the state of Kentucky owes him and his family a living and that he feels he should be either supported or placed in some sedentary type work that he could do.

"The muscular contractions are not, in themselves, sufficiently severe to interfere with carrying out any form of sedentary type occupation and the fact that he mows his yard and raises a garden is indicative of the fact that he can, indeed, do mild muscular type activities without risk.

"I do not feel that there is any neurological treatment for him except the use of sedatives and would strongly be opposed to nerve root sections in an attempt to stop the muscular contractions which are, in themselves, not serious."

Following a "routine check-up" on November 17, 1964, Dr. Pichardo filed a report stating that the patient was "asymptomatic, except for persistence of muscular twitching of right latissimus dorsi * * *. Mr. Driver has completed his treatment for pulmonary tuberculosis. His condition has been considered as minimal, inactive for several years. The intermittent muscular contractions of the posterior scapular groups are of the psychosomatic type and not an organic neurological difficulty * *. The patient would benefit from rehabilitation training. He should continue with Phenobarbital indefinitely and periodic check-ups in our OPD."

The latter report quotes Dr. Meacham's last report at length, and in a letter to Mrs. Driver's counsel dated March 8, 1965, Dr. Pichardo said, "I am not a Neurologist and I accepted Dr. Meacham's report as the true findings of his examination of this tient. Therefore, in view of Dr. Meacham's report and the fact that Mr. Driver's pulmonary tuberculosis has been considered minimal inactive since 1962, I changed my recommendation regarding the patient's employment status."

We have set forth rather fully the salient information in the record. Counsel for Mrs. Driver argued in the circuit court (but

did not submit a brief to this court) that "the ability of a 42 year old manual laborer to engage in 'sedentary type occupation' and/or 'mild muscular type activities' * * is not the ability to engage in a substantially gainful employment." Clearly the chancellor was of the same persuasion, concluding "that a forty-two year old man with only a fourth grade education and by occupation a common laborer, and by reason of either his physical or mental condition is only able to do work of a sedentary type, is, within the meaning of the law * * * [as represented by the definition of 'incapacity' hereinbefore quoted] * * * incapacitated."

 In the field of workmen's compensation this court has accepted (with some degree of misgiving) the proposition "that if a workman is totally disabled from the performance of work in his former occupational classification and his capacity to perform other kinds of work is impaired," he is totally disabled. Cf. E. & L. Transport Co. v. Hayes, Ky., 341 S.W.2d 240, 241, 84 A.L.R.2d 1102 (1960); Leep v. Kentucky State Police, Ky., 366 S.W.2d 729, 730 (1963). However, in the type of case now before us the regulatory definition forbids such a conclusion. "Incapacity" means that which in fact renders the man unemployable in the community of his residence.

After all the evidence has been considered there still remains an area of judgment in which the administrative department, with its superior experience and expertise, must be allowed broad latitude as against the power of the courts to interfere. Perhaps what is really needed in the proliferate field of governmental administration is an ombudsman, a role for which the courts are not equipped or staffed. But even if we should assume that avuncular province in the case now before us, it would be difficult to say that the decision of the administrative officials was arbitrary. The record demonstrates a great deal of constant effort and careful consideration devoted to the case over a period of several years

by various social workers, doctors, supervisory personnel, and hearing examiners. At least upon its face, the record would appear to refute any inference of arbitrariness in approach or attitude on the part of the departmental employes whose services have been engaged in the case.

■ The referee and the appeal board were not satisfied that Mr. Driver was in fact unemployable at the time his case was heard. It should be borne in mind that he had the burden of proving the inaccessibility of work in the community. The evidence in that particular respect was not enlightening. On the face of the record we are of the opinion that the administrative decision was not arbitrary or in abuse of its discretion, and that the judgment of the circuit court was in error. Events which have transpired since the time of the hearing may, of course, very well call for a different result upon a new application.

The judgment is reversed with directions that the order of the appeal board be confirmed.

All concur.

OSBORNE, J., not sitting.